James Donald LANE, Appellant,

v.

STATE of Delaware, Appellee.

Supreme Court of Delaware.

July 12, 1966.

Henry A. Wise, Jr., of Wise & Suddard, Wilmington, for appellant.

William Swain Lee, Deputy Atty. Gen., for appellee.

CAREY and HERRMANN, JJ., and WRIGHT, Judge, sitting.

HERRMANN, Justice:

The defendant James Donald Lane appeals from his conviction of manslaughter after trial by jury.

The material facts are these:

The defendant, 28 years of age, was employed as a nursing assistant at a hospital and was a part-time instructor of State Police in judo. On November 11, 1964, at about 1:45 P.M., the defendant was parked in his automobile with a girl friend in a remote area of a secluded road. Clyde E. Brown, Jr. drove by slowly, turned and stared into the Lane automobile, continued a short distance down the road, then stopped. Brown reached into the back seat of his car, seemingly to get something, then got out and looked or threw something under his car. Brown then walked into the bushes, soon reappearing from the bushes behind the

Lane automobile. Fearful that Brown had a gun, Lane instructed his companion to note Brown's license number, to drive away, and to call the police if she heard a shot. Lane then walked back to the bank along-side the road where Brown was hiding. The subsequent events were described as follows by Lane in a written statement, given to the police immediately afterwards, and admitted in evidence without objection:

"* * * he came out from behind this tree and was standing up over me by several feet, looking down on me. I asked him, 'What are you doing up there watching us?' I asked him, 'What have you got in your pocket?' And he told me, 'Nothing.' He told me he wasn't doing nothing in answer to my earlier question.

"I then said to him, 'Come down here off that bank.' He headed down the bank towards me and I backed away from him out onto the hard road. We then changed positions and he came at me. I don't know if he hit me or not but I let one go at him with my right and hit him on the chin and followed through with another left to his jaw. He then whirled around and I grabbed him by the clothes in the front and we staggered across the road to the bank on the opposite side. He kind of slumped down and I kicked at him twice in the side—I believe it was his left side—as he was down or going down and then as he was huddled like I made a downward chopping-type punch at him with my left hand a couple of times or so to the jaw. He was not fighting any-more. * * *."

* * * * * *

"Question: Did you have and use any type of weapon on Brown other than your two fists and your foot?

"Answer: No, that is all.

"Question: Did Brown at any time have any visible weapon that you could see during the fight?

"Answer: No. He had gloves on. That is all.

"Question: Why did you get out of your car and go after Brown when you saw him in the bushes behind your car?

"Answer: I really can't say. I saw him. He went over the back seat of his car after something and I feared that he might have had a gun or something and I feared for the safety of Loretta and all kind of things like that. You know, you just can't explain why at a time like this.

"Question: Do you recall who swung the first blow, you or Brown?

"Answer: He made a sudden defensive move toward me and threw his arm up and that is when I went at him and I think I hit him first.

"Question: How many blows did Brown land on you, to your knowledge?

"Answer: It started as a push-push affair and he shoved at me. He really never got a good one in on me.

"Question: After Brown was down and did not move did you continue to hit or kick him further?

"Answer: No. That is when I went to his aid and tried to help him but it was too late then. I knew he was hurt bad by the way he looked."

Lane could not revive Brown. When he was unable to obtain assistance from a passing motorist, Lane, with the help of his companion who had returned, rushed Brown to the hospital. Despite their efforts, Brown could not be saved and he died soon after arrival. Death was caused by asphyxia, i. e., lack of oxygen resulting from blood obstruction of the airways. The autopsy showed that Brown had suffered dislocation of both sides of the lower jaw, fractures of the nasal bones, and injury to the brain which produced unconsciousness. There was bleeding from the nasal cavities and the blood moved to the lungs via the airways through the larynx and tracheal windpipe, resulting in asphyxia.

Lane was indicted for manslaughter and found guilty by the jury. He appeals.

I.

The defendant's first ground of appeal is that a mistrial should have been granted, upon his application, when two photographs, not in evidence, were inadvertently included with the exhibits delivered to the jury as it retired to deliberate at the close of the case. The photographs in question showed the body of the deceased after the autopsy had been performed on the skull. The defendant objected to the admission of the photographs in evidence on the ground that they were immaterial and would unduly inflame the jury. The objection was sustained, but by inadvertence the photographs were among the other exhibits taken to the jury room.

Within a few minutes after retiring, the jury notified the trial judge that the two photographs were in its hands by mistake; and they returned all of the exhibits to the judge. After consultation with counsel, the trial judge recalled the jury to the courtroom[1] and the following exchange took place.

"THE COURT: I want to thank the jury for returning the exhibits with the message that there were two photographs among the exhibits which had not been admitted in evidence. The jury is entirely correct. There were two photographs which the Clerk by mistake handed to the Bailiff and which should not have been handed to the Bailiff and should not have gone to the jury room. It is very helpful to the Court that you called this to my attention immediately.

1. The record shows that the jury retired to deliberate at 11:26 A.M. and returned to the courtroom at 11:33 A.M.

"I would like to ask how many members of the jury inspected these two photographs which had not been admitted in evidence before they were returned to the Court?

"THE FOREMAN: We didn't inspect them, your Honor. Someone saw them right away and just showed them to me real fast and I said, 'We can't have it,' and I was saying it as he showed it to me. So they immediately went back in.

"THE COURT: So that there were a few members of the jury that glanced at them?

"THE FOREMAN: Two fleeting glances.

"THE COURT: Two fleeting glances.

"THE FOREMAN: Yes. Except the man who no doubt saw it first. He must have got a better look than I did.

"THE COURT: I see. Members of the jury, I ruled that these two photographs should not be admitted in evidence and were not to be considered by the jury. I now instruct all members of the jury who saw the photographs to disregard such photographs and not let them enter into your deliberations in any way whatsoever and to consider the case as if you had never seen the photographs. I will send out the exhibits with you again and will omit those two that had not been introduced in evidence."

The defendant's motion for mistrial on this situation was denied, in the course of which the trial judge expressed doubt as to the accuracy, in the first instance, of his ruling that the photographs were inadmissible.

The question now before us is whether, under these circumstances, the situation was sufficiently prejudicial to the defendant to warrant the conclusion that the trial court abused its discretion in denying the motion for mistrial. See 23A C.J.S. Criminal Law § 1369; 39 Am. Jur. "New Trial" § 84; 3 Am.Jur. "Appeal and Error" § 971; Compare Patterson v. Surpless, 107 N.J.L. 305, 151 A. 754 (1930); Rent-A-Car Co. v. Globe & Rutgers Fire Ins. Co., 163 Md. 401, 163 A. 702, 86 A.L.R. 922 (1933). We think not.

■ First, as this court held in Wisniewski v. State, 1 Storey 84, 138 A.2d 333 (1957), the admission of photographs of this character generally lies within the discretion of the trial court; and the erroneous submission to the jury of this type of photograph is not generally considered to be prejudicial error. See also Bantum v. State, 7 Terry 487, 85 A.2d 741 (1952).

Secondly, there is nothing to contradict the statement of the foreman of the jury that only he and one other juror gave the photographs "fleeting glances" before they were returned to the trial judge.

■ For these two reasons the possible prejudice to the defendant, arising from this inadvertence, was reduced to the point that, in our judgment, the trial court was clearly within the realm of sound judicial discretion in denying the motion for mistrial.

The defendant puts misplaced reliance upon cases governed by special statutory provisions. See Anno. 20 A.L.R. 1187, et seq. Other cases cited by the defendant on this point are inapposite on their facts.

II.

The remaining grounds of appeal advanced by the defendant are founded upon the jury instructions:

■ A. Addressing himself to the defense of self-defense and the related obligation to retreat, the defendant takes

exception to the following portion[2] of the trial court's charge to the jury:

"The law recognizes the right of self-defense for the purpose of preventing but not of revenging an injury to the person. If the deceased first attacked the defendant, even though the attack was of such a character as to create in the defendant's mind a reasonable belief that he was in danger of death or great bodily harm, it was the defendant's duty to retreat, if he could safely do so, or to use such other reasonable means as were within his power to avoid the killing of the assailant."

The language adopted by the court in this portion of its charge is time-honored. The concept of a duty to retreat, if it is safe to do so, is firmly entrenched in the law of this State. The form as well as the substance of this charge was affirmed by this court in Quillen v. State, 10 Terry 114, 110 A.2d 445 (1955). Although it is recognized that the doctrine underlying our form of jury instruction in this regard has been modified elsewhere, 6 Am.Jur.2d "Assault and Battery" § 75, no reason has been advanced sufficient to justify tampering with our settled rule.

The defendant cites Beard v. United States, 158 U.S. 550, 15 S.Ct. 962, 39 L.Ed. 1086 (1895) and State v. Goldberg, 12 N.J.Super. 293, 79 A.2d 702 (1951). Cases such as these, dealing with attacks when on one's own premises, are not in point. Insofar as State v. Bartlett, 170 Mo. 658, 71 S.W. 148, 59 L.R.A. 756 (1902) may be in conflict with our established rule, it must be disregarded.

B. Next, the defendant objects to the charge on reasonable doubt wherein the trial judge instructed:

"* * * Reasonable doubt does not mean a vague, speculative or whimsical doubt nor a mere possible doubt, but rather the phrase refers to a substantial doubt and such a doubt as intelligent, reasonable and impartial men and women may honestly entertain after a careful and conscientious consideration of all the evidence in the case."

The objection is to the reference to a reasonable doubt as a "substantial doubt." The argument is without merit. The form and substance of the charge as given here have the sanction of long usage in this jurisdiction. We are satisfied that it is a correct charge. Compare 20 Am.Jur. "Evidence" § 1257; 23A C.J.S. Criminal Law § 1274. None of the cases cited by the defendant, dealing with various and sundry definitions of reasonable doubt, is persuasive in view of our own long-established definition.

C. Next, the defendant argues that the evidence did not warrant the last sentence of the following charge on excessive force:

"The law gives to everyone the right to protect his person from unlawful assault and injury by opposing force with force and one is not obliged to wait until he is struck by an impending blow. If personal violence is imminent the person in such danger may protect himself by striking the first blow for the purpose of repelling and preventing the attempted injury to himself. But, as I have said, you may use no more force than is necessary for the pur-

---

**2.** The defendant overlooks the following supplemental charge on the duty to retreat which must be considered as part of the whole:

"If you find that the defendant had reason to believe that the deceased was armed and that he would be in danger and that the defendant was in danger if he attempted to retreat, then the defendant had no duty to retreat and had a right to stand his ground and oppose force with force, even to the extent of taking his assailant's life."

pose of repelling or preventing the threatened injury."

Specifically, the defendant points to the medical testimony that a single blow by fist could have caused the brain injury; and to the following testimony regarding the fractures of the nasal bones:

"Q The fractures to those bones, were they consistent or inconsistent with a blow caused by a fist, if you know?

"A Yes. These type of fractures are consistent with a direct blow to the nose. They could be produced by that.

"Q If you know, Doctor, could you answer whether or not such fractures as you observed in this case could have been caused by one blow or would it have been caused by more than one blow?

"A I would not be able to answer that question because one blow could produce it if it is strong enough and several blows could produce it, too."

On this, the defendant builds the argument that there was no basis in the evidence for the charge on excessive force; that by such charge, the jury was permitted to speculate "as to whether a single blow struck by one in fear of death or great bodily harm could be more force than was necessary under the circumstances."

■ We find the argument unacceptable. The defendant admitted that he kicked and "chopped" the deceased as he fell. The jury would have been warranted in finding from the evidence that the unconsciousness, the fractures of the nasal bones, and the consequent bleeding causing the asphyxia, resulted from the kicks and chopping blows. In that event, the jury would have been justified in

finding, as it obviously did under the court's instruction, that the defendant exercised excessive force and became the aggressor. Clearly, there was evidence to support the charge to which objection is here made.

■ As an afterthought, relying upon Wiggins v. State, Del., 210 A.2d 314 (1965), the defendant asserts that this charge was too abstract and did not apply the law to the facts. The answer to this is that the defendant failed to submit a request for a more detailed charge, and failed to take exception on this ground to the charge as given. Accordingly, the argument comes too late.

■ D. Finally, it is argued that there was no evidence in the case to support the following charge:

"The burden of establishing self-defense to the satisfaction of the jury rests upon the accused, the defendant. No looks or gestures, no matter how insulting, and no words, no matter how offensive, can amount to a provocation sufficient to justify an assault by one person against another. In repelling or resisting an assault no more force may be used than is necessary for the purpose and if a person is assailed and uses in his defense more force than is reasonably necessary for the purpose, he becomes the aggressor."

Again, relying upon the possibility that a single blow could have been the cause of death, it is contended that there was no evidence to support the last sentence of this charge. In the light of all of the evidence, and for the reasons above stated, we are satisfied that there was sufficient evidence to warrant this instruction.

Finding no error in the judgment below, it is affirmed.