**Ira J. SHANTZ, Defendant below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Argued July 8, 1975.

Decided Sept. 4, 1975.

Arlen B. Mekler, Asst. Public Defender, Wilmington, for defendant below, appellant.

Edward C. Pankowski, Jr., Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice:

Defendant appeals from a conviction of murder in the first degree, 11 Del.C. § 636, on three grounds which we consider *seriatim*.

I

The first ground is based on admission into evidence of color photographs of the victim's body which defendant argues were inflammatory and prejudicial.

Under settled law a trial judge has broad discretion in admitting or rejecting photographs of injuries to a victim and, absent abuse of discretion, the ruling will be sustained on appeal. *Lane v. State,* Del.Supr., 222 A.2d 263 (1966); *Bantum v. State,* Del.Supr., 7 Terry 487, 85 A.2d 741 (1952).

Here, the Trial Judge determined that the photographs, although "shockingly horrible," added to the evidence and their probative value outweighed any prejudice to defendant. The photographs were probative as to blood stains and bruises and the extent of the physical beating of the victim, all of which related to defendant's alleged intent. Under these circumstances we conclude that the Trial Court did not abuse its discretion in admitting them.

II

Next, it is argued that the Trial Court erred in denying defendant's motion for a mistrial after a State witness testified that at the time of police interrogation, defendant had expressed a desire to exercise his constitutional right to remain silent. The testimony, given on direct examination, was as follows:

"Q. At the Upper Chichester Police Station did you attempt to interview Mr. Shantz?

A. Yes, sir, we did."

Defendant argues that the State intentionally created in the minds of the jurors an inference equivalent to a comment on his right to remain silent.

The State may not comment on a defendant's exercise of the constitutional right to remain silent *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In other words, the prosecution may not put a

penalty on the exercise of a constitutional right. It does not follow, however, that every reference to the exercise of the right to remain silent mandates reversal. *People v. Key,* Colo.Supr., 522 P.2d 719 (1974).

■ The question under consideration here should not have been asked and when defendant · promptly objected, the Trial Judge put an end to the inquiry and offered to give the jury an appropriate instruction. Nothing said herein is intended to approve such questioning, but it does not follow that the Court should have ordered a mistrial. That was a judgment to be made as a matter of discretion by the Trial Judge and, given what we have in this record, we cannot say that there was an abuse. In so ruling, we note that the question was brief, it was not part of a pattern, the witness was simply testifying to what happened, there was no deception. In this respect, the case is closely comparable to *People v. Meneley,* 29 Cal.App.3d 41, 105 Cal.Rptr. 432 (1973). We find no reversible error.

### III

Finally, defendant contends that his arrest was invalid because it was not based on probable cause and all evidence flowing therefrom must be suppressed.

On the night of January 3, 1974 defendant, the victim (a woman), Norman Speed, and Joseph Lammey left a bar in Pennsylvania and drove to Lammey's residence in Claymont, Delaware.* They were in defendant's truck. Speed remained in the vehicle drinking beer while Lammey, the defendant and the victim entered the house. After a time, Speed knocked on the door but received no answer and returned to the car for more beer. Some time later, defendant returned alone to the vehicle and drove Speed home.

Early in the morning of January 4 Delaware State Police officers (for reasons not at issue here) went to Lammey's residence to investigate a possible homicide. There they found the body of the victim. An autopsy determined that she had been sexually assaulted and severely beaten and had died from multiple stab wounds. Lammey was arrested on a murder charge.

Based on interviews with Speed, Lammey and others, the police became aware of defendant's involvement and an arrest warrant, based at least in part on Speed's statements, was obtained charging defendant with murder in the first degree. Defendant says that Speed's statements were unreliable because he was drunk at the time of the events and the police could not as a matter of law regard the information he gave as credible. The record in the Trial Court includes much testimony and argument about the basis for issuance of the warrant but, as we read defendant's brief in this Court, he concentrates on Speed's unreliability as an informant.

■ Probable cause for arrest may be established through hearsay but, to the extent this includes a report by an informant it must meet a two-fold test of reliability. As this Court said in *Wilson v. State,* Del.Supr., 314 A.2d 905 (1973):

"The affidavit can establish probable cause either by setting out the incriminating personal observations of a reliable affiant (usually a police officer who is presumptively reliable), or it may be based on incriminating reports to the affiant by some informer or third party witness; i. e., hearsay. If the affidavit is based on hearsay, it must contain reasonable corroboration of the hearsay reports. Under the two-fold standard set out in *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), this means (1) that the magistrate must be satisfied that the affidavit

---

* Lammey, a co-defendant, was acquitted in the trial below.

reveals the underlying circumstances from which the informant drew the conclusion that criminal activity had occurred; and (2) that there are sufficient reasons for believing that the informant's information is reliable."

■ As noted in *Wilson,* an identified citizen-informant carries his own credentials for reliability. But the State cannot claim that status for Speed. Like the informant in *Wilson* (who was hospitalized for a drug overdose) Speed's intoxication and participation made what he said suspicious, not reliable. We think, however, that what he said was sufficiently corroborated by other information known to the police to make it reliable for warrant purposes.

Corroboration came from statements by the bartender who placed defendant with Speed, Lammey and the victim at the bar; his testimony makes clear that they were drinking together and left the bar as a group, that neither Speed, Lammey nor the victim had a car, and that they carried two six-packs of beer with them. In addition, Lammey's statement to the police confirmed that he came home by car and that two or three other persons entered the house with him. The police also relied on the nature of the violent injuries to the victim (a woman with an autopsy weight of 215 pounds) and that defendant was an "exceedingly large man" while Lammey was "very small". In addition, the police knew that defendant had a record of violent crimes and was, at the time, on bail awaiting sentencing after conviction for rape.

In sum, these facts, with the reasonable inferences therefrom as to time and place, were sufficient corroboration of Speed's statements to make them reliable for warrant purposes.

\* \* \* \* \* \*

Affirmed.