Christopher BOWE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: April 29, 1986.
Decided: Sept. 2, 1986.

Gregg E. Wilson, Asst. Public Defender, Office of the Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

In this appeal from his conviction for second degree attempted robbery and resisting arrest, the defendant claims that he was denied due process of law by prosecutorial misconduct in the form of impermissible cross-examination at trial. We agree that, in one respect, the prosecutor's cross-examination infringed upon the defendant's right to post-arrest silence and accordingly reverse the conviction and remand for a new trial.

I

The facts underlying the charges against the defendant are not complicated. The complaining witness, John McClendon, an elderly man who was personally acquainted with the defendant, claims that the defendant accosted him on the street, knocked him to the ground and unsuccessfully attempted to remove money from the victim's coat. A plain clothes policeman quickly responded to the incident, and apprehended the defendant after a three block chase. The defendant testified at trial that McClendon had spit on the defendant and,

after an exchange of words, threatened to cut the defendant with a knife. The defendant responded by pushing McClendon to the ground, but denied that he had attempted to rob him. There were no independent eyewitnesses to the event and there is some indication that McClendon had been drinking at the time of the altercation.

The defendant testified to his version of the incident and during the course of cross-examination the following colloquy occurred:

Q. You have been incarcerated since this incident on the 12th of December, 1984?

A. Yes.

Q. Because you can't raise the bail?

A. Yes.

Q. When did you know approximately that you were charged with the attempted robbery in the first degree?

A. From the police station.

Q. Right. When you were arrested, right?

A. Yes.

Q. But according to you, this wasn't no robbery, right?

A. Right.

Q. So, you are sitting down in where, Gander Hill?

A. Yes.

Q. From the 12th of December?

A. Yes.

Q. To the present time?

A. (The defendant nodded his head in the affirmative.)

Q. Pending this trial here for robbery or attempted robbery first degree?

A. Yes.

Q. Did you make any efforts to contact the Governor of the State concerning, you know, this injustice that you were being held on a charge that you had nothing to do with?

A. No, I haven't.

MR. WILSON: Objection, Your Honor. The Governor has never interceded in any of my cases.

THE COURT: Objection sustained.

Following an unreported sidebar conference, the jury was excused and defense counsel moved for a mistrial on the ground that the prosecutor's line of questioning was "totally irrelevant" and "highly prejudicial" because it emphasized the defendant's pretrial incarceration. The trial judge denied defense counsel's motion for a mistrial but did give a cautionary instruction to the jury to disregard the fact of the defendant's "whereabouts" since the day of the defendant's arrest.

After his conviction, the defendant filed a motion for a new trial which was denied on the ground that the curative instruction was sufficient to cure any prejudice against the defendant. The court also noted that a problem arose because "the cross-examination of the defendant with reference to his version of events led almost inevitably to questioning of his status. The situation which developed was of the defendant's own making and not something initiated by the prosecutor."

On appeal, the defendant has renewed his objection to the prosecutor's questioning. He contends that the cross-examination was not only an improper emphasis on the fact of his pretrial incarceration but was also an attempt to impeach his trial testimony by calling attention to his pretrial silence—a fundamental constitutional right.

II

■ We first address the question posed and preserved by defense counsel's objection during trial: whether the prosecutor's questions relating to the defendant's pretrial incarceration were so egregious as to warrant the sanction of a mistrial. Defendant contends that the deliberate reference to his four month pretrial incarceration so prejudiced him in the eyes of the jurors that the presumption of innocence was weakened beyond the curative effect of the trial judge's instruction to disregard such reference.

It has long been the practice in Delaware to require that a defendant not be exhibited to the trial jury when handcuffed and to permit, to the extent feasible, the defendant to wear non-prison garb. *Brookins v. State*, Del.Supr., 354 A.2d 422, 425 (1976). The obvious purpose for this practice is to insure that the jury will not construe the defendant's pretrial incarceration as a suggestion that he is dangerous or insinuate that the defendant is incarcerated on other charges. *Commonwealth v. Keeler*, 216 Pa.Super. 193, 264 A.2d 407 (1970). The fact of pretrial incarceration is entirely irrelevant to the issue of guilt and evidence to that effect may not, in the first instance, be presented by the State.

Here, although the prosecutor's questioning of the defendant had the effect of emphasizing the defendant's incarceration, we are satisfied that the prompt sustaining of the objection by the trial judge followed by his curative instruction to the jury effectively blunted the possible prejudice to the defendant. The trial judge is in the best position to assess whether a mistrial should be granted, and may exercise his discretion in deciding whether to grant a mistrial. Absent an abuse of that discretion, the appellate court will not disturb the trial judge's decision. *Thompson v. State*, Del. Supr., 399 A.2d 194 (1979). We are satisfied that the trial judge did not abuse his discretion here.

### III

The prosecutor's line of questioning that placed before the jury the fact of the defendant's incarceration is also the basis for the second part of defendant's appeal. The defendant contends that the prosecutor's inquiry as to why the defendant did not contact the Governor "concerning * * * this injustice" constituted an impermissible comment on the defendant's right to remain silent. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The State argues that this claim of error was not raised at the trial level and thus may not be raised on appeal. Even if the

issue were properly posed in this Court, the State argues that the prosecutor's reference to the defendant's pretrial silence under the circumstances, in the absence of a showing that the defendant had previously invoked his right to silence under *Miranda*, is not reversible error.

Although defense counsel at trial raised a timely objection to the prosecutor's questioning, the articulated basis for the objection was the prosecutor's improper reference to incarceration—not the attempted impeachment of the defendant through mention of the defendant's post-arrest silence. The trial court sustained the objection and provided a curative instruction focusing only on the incarceration aspect of the prosecutor's questioning. In the absence of a timely objection, a claim of improper impeachment is not subject to review at the appellate level unless such conduct constitutes plain error. *Jenkins v. State*, Del.Supr., 305 A.2d 610, 613 (1973); Supreme Court Rule 8.

In order to secure review under the plain error exception, the error complained of must so clearly prejudice the rights of a defendant as to jeopardize the integrity of the trial process. *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (1986); *Dutton v. State*, Del.Supr., 452 A.2d 127, 146 (1982). Moreover, where the claimed error relates to the admissibility of evidence there must be a reasonable likelihood that the error was result determinative. *Wainwright*, 504 A.2d at 1100. In this case there were no independent eyewitnesses to the altercation between the defendant and the alleged victim. Thus the jury was asked to choose between two conflicting and uncorroborated versions of the incident. In this context impeachment assumes a critical role and to the extent the prosecutor's questioning subjected the defendant to improper impeachment it had the potential to affect the outcome of the trial. Such tactics implicate due process considerations and clearly jeopardize the fairness of the trial process. We accordingly conclude that the defendant is enti-

tled to review of the claim of improper impeachment notwithstanding his failure to assert this claim at trial.

Although the defendant argues that the prosecutor's questions were an infringement upon his right to remain silent under *Miranda,* we take a narrower view of the question and resolve it on State law grounds. In so doing we adopt the rationale of the United States Supreme Court in *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). In *Hale,* the Supreme Court, in the exercise of its supervisory power over federal courts, reasoned that evidence of silence during police interrogation is so ambiguous that it lacks significant probative value and must therefore be excluded. Reference to such insolubly ambiguous conduct for purpose of contrast with later exculpatory testimony at trial is fraught with prejudice. Thus, the risk of confusion is so great that it upsets the probative value of the evidence, and such evidence should be excluded. *Id.* at 178, 95 S.Ct. at 2137.

The Supreme Court noted that many reasons often influence a defendant's decision to remain mute. A defendant's failure to offer an explanation could as easily be taken to indicate reliance on his right to remain silent as to support an inference that the explanatory testimony was a fabrication. Accordingly, the Supreme Court held that it may be prejudicial error for the trial court to permit cross-examination of the defendant concerning his silence during police interrogation. *Id.* at 182, 95 S.Ct. at 2139.

Furthermore, Delaware law clearly recognizes that the State may not comment on a defendant's exercise of the right to remain silent. *Shantz v. State,* Del.Supr., 344 A.2d 245, 246 (1975). In *Shantz,* the prosecution inquired of a State's witness whether he had attempted to interview the defendant. Upon prompt objection, the inquiry was ended and the jury appropriately instructed. While declining to find error, this Court nonetheless noted that the question should not have been asked even though it was not part of a pattern of questioning.

In this case, the prosecutor's questioning was neither brief nor preliminary but was part of a deliberate and extended line of questioning in which the defendant's pretrial silence was highlighted through ridicule. Such prosecutorial overreaching is incompatible with the process due all defendants in a criminal trial under the constitution of this State. Del. Const. art. I § 7; *Goddard v. State,* Del.Supr., 382 A.2d 238 (1977). We find such tactics improper and beneath acceptable standards of prosecutorial conduct. *See Hughes v. State,* Del.Supr., 437 A.2d 559, 571 (1981).

The State argues that the disputed cross-examination of the defendant is within the ambit of permissible questioning recently sanctioned by this Court in *Jensen v. State,* Del.Supr., 482 A.2d 105 (1984). *Jensen* is factually distinguishable. The cross-examination of the defendant in *Jensen* dealt almost entirely with the defendant's pre-arrest silence, with only one reference to post-*Miranda* or post-arrest conduct in the form of "volunteered information beyond the prosecutor's question." *Id.* at 117. Moreover, the holding in *Jensen* tested prosecutorial conduct under the defendant's Fifth Amendment rights secured by the United States Constitution as applied in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) which posit a defendant's post-arrest silence on proof a receipt of *Miranda* warnings. As previously noted, we premise our determination of error on State, not federal, grounds of due process. Moreover, we decline to adopt a ruling which confers an advantage upon the State in cross-examination by reason of the failure of police to afford a defendant his *Miranda* warnings.

Finally, we note that the trial judge did recognize the prosecutor's improper line of questioning but his specific caution to the jury was simply to "disregard the fact of [the defendant's] whereabouts." We rec-

ognize that the trial judge's instruction was responsive to the objection regarding incarceration and we do not expect the trial judge to attempt to cure unarticulated objections. The impression formed by the jury concerning the defendant's post-arrest silence was not addressed by counsel or the court but we do not agree with the trial judge's post-trial comment that the objectionable cross-examination of the defendant was "not something initiated by the prosecutor." Our view of the record clearly leads to the conclusion that the prosecutor's impeachment was a deliberate and purposeful attempt to emphasize the defendant's post-arrest silence. In view of the obvious prejudicial effect of that impeachment, we conclude that the conviction which followed cannot be upheld.

REVERSED and REMANDED for a new trial.