Edmund P. LEWIS, Jr., Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Feb. 2, 1993.
Decided: May 28, 1993.
Rehearing Denied July 28, 1993.

Edward C. Gill (argued), Wolhar & Gill, P.A., Georgetown, for appellant.

Gary A. Myers (argued), and Melanie Withers, Dept. of Justice, Georgetown, for appellee.

Before VEASEY, C.J., HORSEY, MOORE, WALSH, HOLLAND, JJ., Constituting the Court en Banc.

VEASEY, Chief Justice:

In this case, we address primarily the issue of the proper instruction to the jury in a prosecution for driving under the influence of alcohol. We hold that the trial court here erred in its instruction to the jury. In a case where the defendant's blood alcohol concentration ("BAC") is over 0.10 percent by weight as shown by chemical analysis of a sample taken within four hours of the alleged offense, 21 *Del.C.* § 4177(b) states that the defendant "shall be guilty" of violating 21 *Del.C.* § 4177(a). The jury should be so instructed (as the trial court did here), but the jury must also be instructed in clear terms that they must find beyond a reasonable doubt that the defendant was operating a vehicle "while under the influence" of alcohol in violation of 21 *Del.C.* § 4177(a) (which was not done here). Accordingly, we REVERSE and REMAND for a new trial.

## I. FACTS

On the night of September 28, 1990, the defendant, Edmund P. Lewis, Jr. ("Lewis"), went to a restaurant and consumed alcoholic beverages over the course of approximately three hours. Between 12:30 and 12:45 a.m., he and a young woman left the restaurant on his motorcycle to attend a party at the nearby home of a friend. The motorcycle was operated by Lewis while the woman rode on the back as a passenger. On the way to the party Lewis lost control of the motorcycle when another motorcycle cut in front of him and a collision ensued. He crashed approximately 250 yards from the house where the party was being held. Lewis sustained minor injuries and was able to walk his motorcycle to his friend's house. The woman was more seriously injured and had to be helped to the house by another woman who passed the accident on her way to the party. According to Lewis's testimony, he consumed almost one pint of Southern Comfort at the house *after* the accident, but before the police arrived.

After an unspecified period of time had elapsed, someone at the house summoned the police. State Trooper Kenneth Hardy ("Hardy") was the first to arrive at the home and primarily attended to the woman's injuries. Trooper Mark Ostroski ("Ostroski") was the next to arrive. While responding to the house, Ostroski drove past the accident scene and viewed only blood stains, bits of metal, and pieces of clothing on the road. The parties to the accident and the damaged motorcycles had already been removed. Upon arriving at the house, Ostroski encountered Lewis standing next to Hardy's police car. At both the trial and a suppression hearing, Ostroski testified that Lewis had dilated pupils, bloodshot eyes, a bloody forehead and torn clothing with grass stains. He further testified that Lewis smelled of alcohol and was behaving abnormally. Lewis's appearance and behavior led Ostroski to suspect that he was under the influence of alcohol. Ostroski asked Lewis if he had been involved in an accident. Slurring his words, Lewis expressed concern about going to jail and denied having been in an accident. The officer subsequently discovered the damaged motorcycles behind the house and asked Lewis if he knew who owned the bikes. When Lewis answered that he did not, Ostroski ran a computer check on the tags. He determined that one of the motorcycles was registered to Lewis. These circumstances caused the officer to believe that Lewis had been driving the motorcycle when the accident occurred.

Ostroski next conducted a field sobriety test. He first asked Lewis to recite the

alphabet and to count backwards from one hundred. Lewis was unable to complete the alphabet and became confused while counting backwards. While Lewis's difficulty with these tests may have been the result of his alcohol consumption, there was evidence in the record that Lewis suffers from dyslexia. Lewis did not advise the trooper of his condition at that time, however. The officer also tested Lewis's physical coordination. Although he successfully completed a balancing test, he was unable to follow directions when asked to walk heel-to-toe. Similarly, when asked to touch the tip of his nose with his finger, Lewis began to sway and touched his lip. Ostroski then placed Lewis under arrest for driving while under the influence of alcohol.

Lewis was taken to Troop 7 for an intoxilyzer test to measure his BAC. Because a proper reading could not be obtained by using an intoxilyzer, it was necessary to ascertain Lewis's BAC through a blood test. A blood sample was drawn by medical personnel at 3:24 a.m. on September 28, 1990, nearly three hours after Lewis had been operating the motorcycle. Testing revealed a BAC of 0.14 percent. Ostroski advised Lewis of his *Miranda*[1] rights at the hospital and Lewis advised Ostroski that he wanted to remain silent. Nevertheless, Lewis subsequently told Ostroski that he had been in an accident but that his friend had caused it. Lewis was arrested for operating a motor vehicle while under the influence of alcohol in violation of 21 *Del.C.* § 4177(a).

## II. THE TRIAL IN THE COURT OF COMMON PLEAS

On October 16, 1990, Lewis was tried in the Court of Common Pleas. Prior to trial Lewis moved to suppress the blood test on two grounds. First, he claimed that his arrest was illegal because it was made without an arrest warrant. Second, he argued that Ostroski lacked probable cause to believe that he was the driver of the motorcycle at the time the arrest was made. The trial court rejected these assertions and held that the arrest was valid pursuant to 21 *Del.C.* § 701 and 11 *Del.C.* § 1904(a)(2), and that the arrest was supported by probable cause. Lewis's motion to suppress was denied and the matter went to trial.

The State proceeded with its direct examination of Ostroski. As the questioning progressed, the officer recounted what occurred after he advised Lewis of his *Miranda* rights. Ostroski explained that he asked Lewis if he understood his rights and that Lewis stated he did. The officer then testified that he asked Lewis if he wanted to talk and that Lewis replied: "[N]o, I don't want to talk to you." Defense counsel objected to the officer's testimony and moved for a mistrial. The trial judge denied the motion for a mistrial and undertook to cure the problem with the following jury instruction:

> A[n] issue came up in regard to the officer testifying that he did give the defendant his Miranda rights. He has explained to you what Miranda rights are and at the end the officer asked him if he understood them, he said, yes. Any other comment that the officer made, mainly that he elected to remain silent or words to that effect you are to ignore. Just ignore the testimony after the officer stated, that the defendant stated that he understood his rights.

Tr. at 45. The prosecutor continued her direct examination of Ostroski and the following exchange occurred:

Q. Did he ever tell you that he had consumed some alcohol when he as [sic] at the house?

A. No, he never said anything about drinking afterwards.

Q. He never told you anything about that?

A. No.

Tr. at 46. Defense counsel raised no objections to this line of questioning. As part of the defense's case, Lewis testified that he drank almost a pint of Southern Comfort after the accident. This point was stressed

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

in defense counsel's closing as a defense to the BAC reading.

In the State's closing argument, the prosecutor argued the following to the jury:

It's kind of convenient to come up with an excuse, well, as soon as I got back in the house I had a drink, a big drink and I finished the bottle. Okay. That's a convenient excuse. You don't follow directions well, that's why you don't perform the field test very well, these are feeble excuses. You didn't tell the officer, you know, I should'nt [sic] blow in the machine, I had a drink when I went into the house, you didn't tell the officer that. He didn't tell the officer that he had a disability, he said, no, he didn't have a disability, *he didn't volunteer any information to the officer at any point that evening.*

Appellant's Appendix to Opening Brief at 59–60 (emphasis supplied). Defense counsel objected to the prosecutor's reference to what the defendant did not volunteer. A side bar was held. The trial judge overruled the objection.

After closing arguments were completed, the trial judge instructed the jury on the application of 21. *Del.C.* § 4177. The judge stated, in part:

In order for you to justify a conviction of the defendant under the statute the *State must prove beyond a reasonable doubt two essential facts. 1) That the offense occurred at the time and place alleged. 2) That the defendant did actually operate a motor vehicle on the highways or elsewhere in this State, and lastly that [sic] the time of operating said vehicle the defendant was in fact under the influence of alcohol.* To operate a vehicle means to drive a vehicle, that is steer and control a vehicle while in motion. Under the influence of alcohol means to affect one's nervous system, brain, or muscles by use of beer, wine, whiskey or other spirits containing alcohol so as to impair to an appreciable degree the ability to operate a vehicle in a manner like that of an ordinary prudent and cautious person in full possession of his or her's [sic] faculties using reasonable care and under like conditions. Now mere indulgence in such beer, wine, whiskey and spirits containing alcohol is not sufficient to prove under the influence of alcohol. On the other hand the State does not have to prove the person was drunk, that is completely helpless or almost helpless as a result of the use of such alcohol. But the State must show impairment to the degree that I have explained to you, and that the impairment rose [sic] as a result of the defendant's use of alcohol and being under it's [sic] influence. We have a statute in this State, Title 21, Section 4177(b) which specifies the meaning be described by the jury to the result of a test which admitted in evidence upon the trial of a person for the offense of operating a motor vehicle while under the influence of alcohol. The statute is as follows, a person charged under subsection (a) of this section, which I previously read to you, whose blood alcohol concentration is one tenth of one percent or more by weight as shown by a chemical analysis of the blood, breath or urine sample taken within four hours of the alleged offense shall be guilty of violating subsection (a) of this section. This provision shall not preclude a conviction based on other admissible evidence. *By reason of the legislative mandate of this statute in any given case which charge is that of driving, operating or having any physical control of a motor vehicle while under the influence of alcohol, and a chemical analysis of blood, breath or urine has been taken within a couple hours of the alleged offense, the State need only prove to the satifiction [sic] of the jury beyond a reasonable doubt that at the time and place of the alleged offense the defendant did drive, operate or have actual physical control of a motor vehicle, and that a test of the defendant's blood alcohol concentration taken within four hours of the alleged offense showed one tenth or one percent or 0.10 of one percent or more by weight.* The defendant has not denied that a blood test was administrated [sic] by a Phlebotomist at the hospital within four hours of the alleged offense, and the State has pre-

sented for your consideration evidence that such person's blood had reached a blood alcohol concentration of 0.14 of one percent by weight. *The only elements of the offense, therefore, which you must consider in determining the defendant's guilt or innocence in this case, is a determination of whether you're satisfied beyond a reasonable doubt that the blood sample was properly taken by a Phlebotomist and was properly analyzed by the State Chemist.*

Tr. at 80–82 (emphasis supplied.) Lewis's counsel objected to this portion of the charge on the following grounds:[2]

[Y]ou have indicated to [the jury] if he were operating the motor vehicle and then within the twenty four [sic] hour period afterwards he had a blood alcohol level of 0.10 or greater—that seems to me that in fact the defendant is guilty of the offense. The difference in this case where there is an allegation that the defendant went ahead and imbibed in alcoholic beverage after he was operating the motor vehicle, it's a violation of due process and I think it's a violation actually of the actual statute, to present a scenario where the person could have nothing at all to drink and then go to their home and consume alcohol and somehow they're arrested and tested within four hours, they would be found guilty of the offense. . . .

Tr. at 84. The trial judge, in response, stated:

Well, you presented it as a defense. It's a question of fact for the jury. I'm sure if the jury got it they do believe the fact that he did drink after he operated the vehicle then under those circumstances they will give him the benefit of the

doubt and find him not guilty because the drinking was after the operating.

Lewis was subsequently found guilty of driving under the influence of alcohol and appealed his conviction to the Superior Court. The Superior Court affirmed the conviction on November 6, 1991. Lewis now appeals from the November 6 ruling.

## III. THE TRIAL COURT'S ERROR IN CHARGING THE JURY UNDER 21 DEL.C. § 4177

■ The standard and scope of review is whether the trial court erred as a matter of law in instructing the jury. This Court reviews questions of law *de novo. Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del.Supr., 445 A.2d 927 (1982).

■ Lewis contends that the trial court erred in instructing the jury that if the defendant did drive, and if a chemical test taken within four hours of the defendant driving shows a blood alcohol level of 0.10 percent or greater, the defendant is guilty of driving while under the influence. Defendant contends that the charge fails clearly to state that the defendant must be found to have been under the influence of alcohol *while* driving. 21 *Del.C.* § 4177 provides, in part:

§ 4177. **Operation of vehicle while under the influence of alcohol and/or drugs; penalties.**

(a) *No person shall drive,* operate or have in actual physical control a vehicle, an off-highway vehicle, a moped or a bicycle *while under the influence* of alcohol or of any drug or any combination of drugs and/or alcohol.

---

2. Common Pleas Crim.R. 30(a) provides:

(a) **Requests for Instructions.** At the close of the evidence or at such earlier time as the Court reasonably directs, any party may file written requests that the Court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The Court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The Court shall instruct the jury after the arguments are completed and such other times, including prior to introduction of

evidence, as the Court may desire. Except with special permission of the Court, no party may assign as error any portion of the charge or omission therefrom unless he objects thereto before or at a time set by the Court immediately after the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.
The corresponding Superior Court Criminal Rule 30 is similar.

(b) *Any person charged under subsection (a)* of this section *whose blood alcohol concentration is one tenth of 1%* or more by weight as shown by a chemical analysis of a blood, breath or urine sample taken within 4 hours of the alleged offense *shall be guilty of violating subsection (a) of this section.* This provision shall not preclude a conviction based on other admissible evidence.

(Emphasis supplied.)

Subsections (a) and (b) must be read together. Under subsection (a), one must be found, beyond a reasonable doubt, to have operated a vehicle "while under the influence of alcohol...." Subsection (b) is available for use in the event there is evidence that the defendant's blood, breath, or urine sample was taken within four hours of the alleged offense and shows a BAC of 0.10 percent or more by weight as shown by chemical analysis. The statute is unambiguous that "the alleged offense" refers to subsection (a) which makes it a violation for one to operate a vehicle "while under the influence of alcohol." Subsection (b) then provides that in such a case, the defendant "shall be guilty of violating subsection (a) of this section."

■ We express no opinion whether the charge like the one given in this case would be reversible error in a case where there was no issue whether the alcohol was consumed before or after the defendant operated the vehicle. Here, however, that was precisely the issue. The charge to the jury could be read as permitting a finding of guilt based solely on a finding that the defendant had been driving and that the BAC was 0.10 percent or more, without requiring a finding of operating a vehicle "while under the influence of alcohol."[3] A charge substantially in the following language is appropriate[4] in a case of driving under the influence of alcohol where there is a chemical test:

Before the defendant may be found guilty of driving while under the influence of alcohol, the State must prove both of the following two elements beyond a reasonable doubt:

First, that the defendant drove a motor vehicle at or about the time and place charged;

Second, that the defendant was under the influence of alcohol while he drove the motor vehicle.

Not every person who has consumed alcoholic beverages is "under the influence" as that phrase is used here. The evidence must show that the person has consumed a sufficient amount of alcohol to cause the driver to be less able to exercise the judgment and control that a reasonably careful person in full possession of his or her faculties would exercise under like circumstances.

It is not necessary that the driver be "drunk" or "intoxicated." Nor is it required that impaired ability to drive be demonstrated by particular acts of unsafe driving. What is required is that the person's ability to drive safely was impaired by alcohol.

The law provides that any person who operated a motor vehicle while under the influence of alcohol and whose blood alcohol concentration is one tenth of one percent or more by weight as shown by a chemical analysis of a blood, breath or urine sample taken within four hours of driving a motor vehicle, shall be guilty of the offense of driving while under the influence of alcohol. This provision does

---

**3.** It is to be noted that earlier in the charge, the trial judge did state that the State was required to prove that the defendant was under the influence of alcohol "[at] the time of operating said vehicle." The problem is that this statement was superseded by the erroneous part of the charge which came later when the court stated: *The State need only prove* to the satisfaction [sic] of the jury ... beyond a reasonable doubt *that* at the time and place of the alleged offense the *defendant did drive,* oper-

ate or have actual physical control of a motor vehicle, *and that a test* of the defendant's blood alcohol concentration taken within four hours of the alleged offense *showed one tenth or one percent or 0.10* of one percent or more by weight.
Tr. at 81–82 (emphasis supplied).

**4.** This charge may, of course, be adapted to the particular circumstances which fall within the various terms of the statute.

not preclude a conviction based on other evidence.

In this case the State presented the results of the [testing device] which uses a scientifically sound method of measuring the alcohol content of a person's blood. The State is not required to prove the underlying scientific reliability of the method used by the [testing device]. The State is required, however, to establish that the [testing device] was in proper working order and that it was correctly operated by a qualified person.

In order to find the defendant guilty of the offense charged, you must be satisfied beyond a reasonable doubt that the defendant was under the influence of alcohol while driving a motor vehicle. To the extent that the State relies upon a scientific test for measuring the blood alcohol content of the defendant's blood that test (1) must have been taken within four hours of the driving of the motor vehicle and (2) the results of the test must demonstrate beyond a reasonable doubt that there was one tenth of one percent or more by weight of alcohol in the defendant's blood at the time of the driving.

The State relies on *Coxe v. State*, Del. Supr., 281 A.2d 606 (1971), *Slaughter v. State*, Del.Supr., 322 A.2d 15 (1974) and other cases. In *Coxe*, this Court stated, *inter alia:*

> The statute provides for no presumption of guilt, but instead provides that any person having the specified blood alcohol concentration "shall be guilty." To establish guilt, the State must prove only that the defendant was in physical control of the vehicle, and that a proper and timely test showed the required percentage of alcohol concentrated in the defendant's system....

281 A.2d at 607.

There was no issue in *Coxe* as there is here, concerning the time sequence—did the defendant consume a significant quantity of alcohol after he finished operating the vehicle? *Coxe* does not stand for the proposition that the quoted language constitutes a proper jury instruction in a case such as this one.

The State's reliance on the case of *Slaughter v. State* is similarly misplaced. In *Slaughter* there was no question that the defendant consumed alcoholic beverages prior to being arrested for driving under the influence. Rather, the issue raised on appeal concerned whether the defendant's BAC was tested in a timely manner. The defendant contended that the charge to the jury did not reflect the fact that his BAC while driving was lower than when he was tested because alcohol absorbed into his blood stream between the time he was arrested and the time of sampling. Accordingly, *Slaughter* does not address the issue presently before this Court.

In the case of *Brank v. State*, Del.Supr., 528 A.2d 1185 (1987), this Court considered whether jury instructions made pursuant to section 4177 improperly create a mandatory presumption of guilt in violation of the due process clause of the Fourteenth Amendment. This Court held that intoxication is not a fact to be presumed under section 4177. Rather, it is "a legal conclusion which *must* be reached if the statutory elements are proved beyond a reasonable doubt." *Id.* at 1192 (emphasis in original). This Court explained that "[t]he statute provides for no presumption of guilt, but instead provides that any person having the specified blood alcohol concentration 'shall be guilty.'" *Id.* (quoting *Coxe*, 281 A.2d at 607).

■ It is the well-settled law of this State that statutes should be construed in a manner which avoid an absurd or mischievous result. *Friant v. Friant*, Del.Supr., 553 A.2d 1186 (1989); *Burpulis v. Director of Revenue*, Del.Supr., 498 A.2d 1082, 1087 (1985). In the present case, an absurd, mischievous, and possibly unconstitutional result would certainly occur if the instructions to the jury would permit a person who drives *prior* to drinking alcohol to be convicted if the individual consumed enough alcohol *after* driving to raise his BAC to a level exceeding 0.10 percent. The jury instructions failed clearly to instruct the jury that they must find beyond

a reasonable doubt that Lewis was operating his vehicle "while under the influence of alcohol" in violation of 21 *Del.C.* § 4177(a).

■■■ Since the conviction must be reversed on the foregoing ground alone, we need not reach the other issues raised in this appeal. Nevertheless, since a new trial is ordered, it is appropriate that we address certain of the other issues, in the interests of justice and judicial economy. Appellant contends that the trial court abused its discretion by failing to grant a mistrial when the State, twice during direct examination and once during summation, referred to appellant's post-arrest silence. The trial judge is in the best position to assess whether a mistrial should be granted, and may exercise his discretion in deciding whether to grant a mistrial. Absent an abuse of discretion, this Court will not disturb the trial judge's decision. *Bowe v. State*, Del.Supr., 514 A.2d 408, 410 (1986). We find that the State's references to the defendant's post-arrest silence constitute prosecutorial overreaching which we assume will not be repeated in the event of a retrial.

In the case of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), a state prosecutor attempted to impeach a defendant who recounted an exculpatory story for the first time at trial, by cross-examining the defendant about his post-arrest silence. The State argued that such questioning was necessary to counter defendant's story because the prosecution had little else with which to impeach him. Emphasizing the importance of cross-examination, the State claimed that the discrepancy between defendant's exculpatory story and post-arrest silence would give rise to an inference that the story was fabricated and thereby provide the jury with relevant information. *Id.*, 426 U.S. at 616–17, 96 S.Ct. at 2244. Rejecting the State's arguments, the Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Id.*, 426 U.S. at 619, 96 S.Ct.

at 2245. The Court explained that the *Miranda* warnings are a prophylactic means of safeguarding a defendant's Fifth Amendment right to remain silent, among others. "Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these ... rights. Thus, every post-arrest silence is insolubly ambiguous...." and lacks significant probative value. *Id.*, 426 U.S. at 617, 96 S.Ct. at 2244. The Court further held that it is fundamentally unfair and a violation of due process to penalize an arrestee for exercising his rights by drawing unfavorable inferences from his silence. *Id.*, 618–19, 96 S.Ct. at 2245; *Jensen v. State*, Del.Supr., 482 A.2d 105, 115 (1984) ("The Fifth Amendment guarantees an accused the right to remain silent ... and prevents the prosecutor from commenting on the silence of a defendant who asserts the right.").

■■■ Similarly, it is the well-settled law of Delaware that "the prosecution may not put a penalty on the exercise of a constitutional right." *Shantz v. State*, Del.Supr., 344 A.2d 245, 246–47 (1975). "Delaware law clearly recognizes that the State may not comment on a defendant's exercise of the right to remain silent." *Bowe v. State*, Del.Supr., 514 A.2d 408, 411 (1986). In the case of *Bowe v. State*, the prosecutor engaged in a deliberate and extensive line of questioning which highlighted defendant's pretrial silence. *Id.* This Court held such conduct to be prosecutorial overreaching that is incompatible with the due process afforded to all defendants under the Delaware Constitution. *Id.* at 411; Del. Const. art. I § 7. Citing *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), this Court noted that evidence of silence during police interrogation must be excluded because it is so ambiguous that it lacks significant probative value and risks confusion. 514 A.2d at 411.

■■■ Although the prosecutor's misconduct in the present case is not as egregious as the conduct this Court denounced in *Bowe*, Lewis's rights were violated, nonetheless. The prosecutor carelessly allowed Ostroski to comment on appellant's decision to invoke his right to remain silent and

subsequently asked improper questions during the same line of direct examination concerning things that appellant "never said." With regard to the prosecutor's summation, her references to the field test were proper because they concerned pre-arrest silence. Pre-arrest silence has been held to be admissible for impeachment purposes because the "impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth finding function of the criminal trial." *Jensen,* 482 A.2d at 116 (quoting *Jenkins v. Anderson,* 447 U.S. 231, 238, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980)). The prosecutor's summation, however, contained improper references to appellant's post-arrest silence.

■ Nevertheless, the prosecutorial misconduct in this case does not merit reversal. While the State may not put a penalty on the exercise of a constitutional right, "every reference to the exercise of the right to remain silent [does not] mandate[ ] reversal." *Shantz,* 344 A.2d at 247. The first reference to post-arrest silence was made by Trooper Ostroski in response to a permissible question. Ostroski was simply testifying as to what happened. There was no deception. *Id.* In addition, the trial judge took sufficient steps to avoid prejudice by curing the defect with a jury instruction. The other improper references also do not require reversal. "In determining whether the fairness of the trial was adversely affected by prosecutorial action, this Court generally considers three factors: 1) the centrality of the issue affected by the alleged error; 2) the closeness of the case; and 3) the steps taken to mitigate the effects of the alleged error." *Weddington v. State,* Del.Supr., 545 A.2d 607, 612 (1988) (*citing Hughes v. State,* Del. Supr., 437 A.2d 559, 571 (1981)). This case was not sufficiently close and the prosecutor's comments did not affect a central issue in the trial. Furthermore, the trial judge gave a curative instruction after the first and most prejudicial reference was made. This Court has often held that even prejudicial error is usually cured with an instruction to the jury. *Id.* The trial court did not abuse its discretion even though the prosecutor acted improperly. Lewis's claim is without merit.

The conviction is REVERSED and the matter is REMANDED for proceedings not inconsistent with this opinion.