John A. KEPERLING, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 461, 1996.

Supreme Court of Delaware.

Submitted: Aug. 26, 1997.
Decided: Sept. 12, 1997.

Merritt Burke, III, Assistant Public Defender, Georgetown, for appellant.

Sam Glasscock, III, Department of Justice, Georgetown, for appellee.

Before WALSH, HOLLAND and
BERGER, JJ.

HOLLAND, Justice:

The defendant-appellant, John A. Keperling, Jr. ("Keperling") was charged in an indictment with one count of non-capital Murder in the First Degree and one count of Possession of a Deadly Weapon During the Commission of a Felony. Following a jury trial in the Superior Court, Keperling was convicted, as charged. This is Keperling's direct appeal.

Keperling has raised one issue before this Court. According to Keperling, the Superior Court abused its discretion by permitting the projection of four autopsy photographic

slides during the testimony of the Deputy Chief Medical Examiner. This Court has concluded that Keperling's contention is without merit. Accordingly, the judgments of the Superior Court are affirmed.

### Facts

The homicide victim, Judith Irvine ("Irvine"), was Keperling's mother. Irvine was last seen alive on March 2, 1995. Irvine failed to appear for an appointment on March 3, 1995. The report of Irvine's absence was initially treated as a missing person complaint by the Delaware State police.

Keperling was arrested by the Milford Police Department on March 5, 1995, for driving while under the influence of alcohol and was committed to Sussex County Correctional Institution. The car that Keperling had been driving belonged to Irvine and was impounded.

Approximately three weeks after she was last seen, Irvine's partially decomposed body was discovered in a second vehicle owned by her. That vehicle was located adjacent to her residence. On the morning of March 23, 1995, Dr. Galicano B. Inguito ("Dr. Inguito"), the Deputy Chief State Medical Examiner, performed an autopsy.

At trial, Keperling did not deny that he had killed his mother. He testified that he had been drinking and could not remember what had happened. Keperling told the jury "I don't remember doing it . . . in my heart, I don't think I did, but if I did, God forgive me." Keperling offered no alibi defense.

### Evidentiary Dispute
### Autopsy Photographic Slides

At issue in this appeal are the introduction of four photographic slides taken during the autopsy. The four photographic slides showed the face and head of Irvine's partially decomposed body. The hair around the wounds depicted in the slides had been shaved.

The State sought to allow Dr. Inguito to display the four photographic slides of Irvine's wounds to explain his testimony. Keperling's trial attorney objected to the proposed use of photographic slides. Before ruling on either the State's request or Keperling's objection, the Superior Court permitted *voir dire* of Dr. Inguito concerning the four slides, outside of the jury's presence.

Dr. Inguito testified that death was due to the cumulative effect of numerous blows with a blunt object, consistent with wounds inflicted by a claw hammer.[1] According to Dr. Inguito's *voir dire* testimony: at least nineteen of the blows occurred before death; death was not instantaneous; and, the force of a number of the blows left severe wounds to the head. Dr. Inguito testified on *voir dire* that the slides would "definitely" assist him in explaining the nature and severity of Irvine's injuries.

Dr. Inguito also testified that a blunt force injury first turns blue, then brown, and then yellow, over a period of several days. The photographic slides showed brownish yellow skin coloration. According to Dr. Inguito, the coloration shown in the slides was attributable primarily to the infliction of injuries and only twenty percent of the coloration was due to decomposition.

After hearing Dr. Inguito's *voir dire* testimony, the Superior Court concluded that the photographic slides were relevant to establish the assailant's intentional conduct due to the nature, forcefulness, and extent of the wounds. The Superior Court also concluded that each slide depicted evidence that the others did not and, therefore, the slides were not cumulative. The Superior Court then determined that the probative value of the photographs outweighed any potentially unfair prejudice to Keperling. Accordingly, the Superior Court ruled that the four photographic slides were admissible evidence and could be projected to explain the testimony of Dr. Inguito.

Prior to Dr. Inguito's testimony before the jury, however, the Superior Court *sua sponte* gave a cautionary instruction about the pur-

---

**1.** Samples of blood taken from a claw hammer found in a locked toolbox in Keperling's bed-   room matched samples taken from Irvine's body.

pose for which the photographic slides were being displayed, as follows:

> Before Dr. Inguito is sworn in, members of the jury, the reason we took a break is because we had to look at pictures taken by the Deputy Chief Medical Examiner of the body of the victim in this case. These are not pleasant pictures and there are [four] of them.

> They are admitted not to show you the horror of death. You can imagine that without being forced to look at them. They are admitted because each of them shows, in some unique manner, the number of injuries inflicted, the severity of those injuries, and the location of those injuries, because those may all be matters that you can take into consideration in determining whether all of the elements of the offense with which the defendant is charged have been met.

> Please understand that these are pictures of the body that was [sic] taken days after the injury. There is some decomposition involved. It is a horrible thing. You are to view these as objectively as you can, understanding that these pictures do not establish the guilt or innocence of this accused and are not presented to you in any way intending to inflame you against the defendant, but merely because I have determined they are necessary for you to determine the nature and extent of the injuries.

### Autopsy Photographics
### Properly Admitted Evidence

■ Keperling's first contention is that the photographic slides were inadmissible because they were "gruesomely colorful" and would inflame the jury. The fact that a photograph of the victim may be gruesome or unpleasant does not render it inadmissible. The trial judge must determine if the probative and material evidentiary value of the photograph, with regard to establishing an element or elements of the alleged offense, is substantially outweighed by potentially unfair prejudice to the defendant.

D.R.E. 403. *See, e.g., Bailey v. State,* Del. Supr., 490 A.2d 158, 167 (1983); *Young v. State,* Del.Supr., 407 A.2d 517, 522 (1979); *Shantz v. State,* 344 A.2d 245, 246 (1975); *Dickens v. State,* Del.Supr., 437 A.2d 159, 162 (1981).

■ Keperling's second contention is that the photographic slides of the autopsy should not have been projected onto a screen and thereby enlarged. The record reflects that the photographic slides were approximately three feet by three feet in size when projected. Where photographic slides are admissible evidence, this Court has held that the trial judge's decision to allow their projection before the jury is not an abuse of discretion. *See Casalvera v. State,* Del.Supr., 410 A.2d 1369, 1372–73 (1980) and *Conyers v. State,* Del.Supr., 396 A.2d 157, 160 (1978).

■ Keperling's final contention is that the information depicted in the photographic slides could have been placed before the jury by Dr. Inguito's autopsy report alone. However, the State "is not required to minimize [the brutality of a criminal act] by selecting the least dramatic means of presenting [its] evidence." *Casalvera v. State,* 410 A.2d at 1373; *Whalen v. State,* Del.Supr., 434 A.2d 1346, 1356 (1980). The use of the photographic slides to present evidence that could have been placed before the jury in another manner by verbal testimony is entirely proper. *Casalvera v. State,* 410 A.2d at 1372–73. In addition, the Superior Court was persuaded by the reasons Dr. Inguito articulated on *voir dire* about why the photographic slides would "definitely" help to explain his testimony to the jury. This Court has recognized that oral testimony is not necessarily an adequate substitute for a photographic depiction of the deliberate and vicious nature of an assailant's homicidal attack. *See Young v. State,* 407 A.2d at 522.

■ Keperling was charged with Murder in the First Degree.[2] To establish that crime, the State was required to prove that Keperling killed his mother and that he intended to bring about her death. *Dickens v. State,* 437 A.2d at 163. In this case, the

---

2. Under 11 *Del.C.* § 636(a) "a person is guilty of murder in the first degree when: (1) the person intentionally causes the death of another person. . . ."

photographic slides were relevant to the issue of the assailant's intent to kill Irvine and to the assailant's state of mind. *Dickens v. State,* 437 A.2d at 162–63.

█ The record reflects that the manner in which the Superior Court evaluated and ruled upon the use of the autopsy photographic slides was a model of proper procedure. First, the Superior Court decided the admissibility of the photographic slides only after a *voir dire* of the Deputy Chief Medical Examiner and hearing argument on the matter from the respective attorneys. *See Lynch v. State,* Del.Supr., 588 A.2d 1138, 1141 (1991). Second, the Superior Court made a finding that each photographic slide had independent probative and material evidentiary value. Third, the Superior Court determined that the evidentiary value of each slide for the jury outweighed any potentially unfair prejudice to Keperling. *See e.g. Shantz v. State,* 344 A.2d at 246. Finally, the Superior Court *sua sponte* gave an appropriate cautionary instruction to the jury. *Cf.* D.R.E. 105 and *Getz v. State,* Del.Supr., 538 A.2d 726, 734 (1988).

### Conclusion

The Superior Court has broad discretion to permit the introduction and display of photographs of murder victims. Unless that discretion is abused, the trial judge's ruling will be sustained on appeal. *Casalvera v. State,* Del.Supr., 410 A.2d 1369, 1372, *citing Conyers v. State,* Del.Supr., 396 A.2d 157, 160 (1978); *Young v. State,* Del.Supr., 407 A.2d 517, 522 (1979) and *Shantz v. State,* Del. Supr., 344 A.2d 245, 246 (1975). We hold that the Superior Court properly exercised its discretion in allowing the State to display the four autopsy photographic slides to the jury during the testimony of the Deputy Chief Medical Examiner.

The judgments of the Superior Court are affirmed.