# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,      )
      )
      )
      )
v.      )   Case No. 1212008999
      )
      )
DENISE R. MOORE      )
      )
Defendant.      )

Submitted: April 16, 2014
Decided: June 30, 2014

Allison J. Abessinio, Esquire
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State*

Andrew Rahaim, Esquire
2055 Limestone Road
Suite 211
Wilmington, DE 19808
*Attorney for Defendant*

## DECISION AFTER TRIAL

### INTRODUCTION

On December 14, 2012, Denise R. Moore (hereinafter "Defendant") was charged with Driving a Vehicle Under the Influence of Alcohol (hereinafter "DUI") in violation of 21 *Del. C.* § 4177(a) and 2 Lighted Lamps Shall be Displayed, 1 on Each Side at the Front of Every Motor Vehicle in violation of 21 *Del. C.* § 4352(a). Defendant filed a motion to suppress evidence obtained as a result of Defendant's arrest. After a hearing, the Court found that probable cause for Defendant's arrest existed, and the case proceeded to trial. This is the Court's decision in the matter.

# FACTUAL BACKGROUND

The State's only witness at trial was Corporal Michael Ripple (hereinafter "Corp. Ripple") of the Delaware State Police. Corp. Ripple testified that on December 14, 2012, he was on patrol near the intersection of Kirkwood Highway and Limestone Road in New Castle County. Corp. Ripple parked his marked patrol vehicle in the parking lot of the Mill Creek Shopping Center. At approximately 2:45 a.m., Corp. Ripple observed two vehicles, one of which had no headlights on, and which appeared to be following the other vehicle. Corp. Ripple pulled out of the parking lot and followed the vehicle without headlights for approximately ¼ mile, and then activated his emergency lights. The vehicle pulled over immediately and without incident.[1] Corp. Ripple approached the vehicle, which was operated by Defendant, and Defendant told him that her lights had failed while she was driving, which is why she was following the other vehicle to ensure that she would arrive at her destination. Corp. Ripple did not personally check to see whether Defendant's lights were inoperable, but he accepted Defendant's explanation as true.

Upon making contact with Defendant, Corp. Ripple detected a strong odor of alcohol emanating from the passenger compartment, and he observed Defendant's bloodshot, glassy eyes. When Corp. Ripple asked if she had been drinking, Defendant responded that she had two beers prior to driving and that she had been bartending that night. During this conversation, Defendant did not slur her words, she was able to produce all requested documents quickly, and she was cooperative.

Corp. Ripple asked Defendant to perform some preliminary tests. Upon exiting her vehicle, Defendant used her vehicle door for support. Corp. Ripple also had Defendant perform

---

[1] Other than the inoperable lights, Corp. Ripple testified that he did not observe the Defendant drive erratically or commit any traffic violations.

2

three NHTSA-approved field tests.[2] Following the completion of the field tests, Corp. Ripple placed Defendant under arrest for DUI and transported her to Troop 6, where Defendant voluntarily submitted to an Intoxilyzer test.

The Court determined at the suppression hearing that Corp. Ripple had probable cause to arrest Defendant for DUI. At trial, the State sought to enter into evidence the Intoxilyzer report for Defendant through the testimony of Corp. Ripple. Defense counsel objected, arguing that Ripple could not testify to the actual calibration process and to the contemporaneousness of the testing and the signature. The Court concluded that it would reserve its decision to perform further research on the issue. The Court noted that if Corp. Ripple is found to be a qualified witness, then the Court will look at the Intoxilyzer report in its determination of the matter, but if Corp. Ripple is not considered a qualified witness, the Court will exclude the Intoxilyzer report from consideration.

## DISCUSSION

### ADMISSIBILITY OF THE INTOXILYZER RESULTS

Under Delaware law, the results of an Intoxilyzer test may only be admitted if the State can show that the machine was in proper working order on the date it was used on a defendant.[3] To prove that the machine was working, the State may enter into evidence the calibration logs for the specific Intoxilyzer used in a matter through the business records exception to the hearsay rule, D.R.E. Rule 803(6). "To meet the exception requirement under the rule, the party which proffers the evidence must show that it was: (1) prepared in the regular course of business; (2) made at or near the time of the event; (3) trustworthy; and (4) testified to by custodian of the

---

[2] Corp. Ripple administered the horizontal gaze nystagmus (HGN), walk-and-turn, and one-leg stand tests. Defendant did not state to Corp. Ripple that she had any injuries that would prevent her from performing the tests, nor did Defendant say she was cold at time, both issues that could have impacted the results of the tests.

[3] *State v. Vickers*, 2010 WL 2299001, at *3 (Del. Com. Pl. June 9, 2010).

3

record or other qualified person."[4] The "other qualified person" may testify so long as he or she "can attest that: (1) the declarant had knowledge to make the entries in the document; (2) that the declarant's recording of the statements were contemporaneous with his or her actions; (3) that the declarant made the record in the regular course of business activity; and (4) that such records were regularly kept."[5] "The witness 'need only have knowledge of procedures under which the records were created.'"[6] Indeed, the witness does "not need to personally observe the state chemist conduct a calibration of the Intoxilyzer machine in order to admit the calibration log into evidence."[7]

Corp. Ripple, although he had not personally witnessed a calibration performed by the state chemist, Cynthia McCarthy (hereinafter "McCarthy") testified that she made the calibration records in the regular course of business; that McCarthy signed the records at or near the time she completed the calibration checks; and that she is trustworthy.[8] Corp. Ripple also noted that he was aware that the state chemist calibrates the Intoxilyzer machine at three separate levels-0.00, 0.05, and 0.10, that the readings are printed out from the machine, and placed into the calibration log books.

To show that he was an "other qualified witness"[9] who may testify to the aforementioned factors, Corp. Ripple testified that the state chemist, as the individual trained to perform the

---

[4] *Id.*, citing *Talley v. State*, 841 A.2d 308 (Del. 2003).

[5] *Vickers*, 2010 WL 2299001, at *3, citing *Trawick v. State*, 845 A.2d 505 (Del. 2004); *State v. Boyer*, 2006 WL 2666207 (Del. Com. Pl. Sept. 18, 2006).

[6] *Palomino v. State*, 2011 WL 2552603, at *3 (Del. Super. Apr. 4, 2011), quoting *U.S. v. Wables*, 731 F.2d 440, 449 (7th Cir. 1984).

[7] *Palomino*, 2011 WL 2252603, at *3.

[8] In Delaware, there is a presumption that the source of the information is trustworthy. "There is a well established presumption that, in the absence of evidence to the contrary, those responsible for service to the public will carry out their duties in a proper, careful, and prudent manner." *State v. McCoy*, 2012 WL 1415698, at *5 (Del. Super. Feb. 21, 2012), quoting *Judah v. State*, 234 A.2d 910, 911 (Del. 1967)).

[9] "As stated in *US v. Console* [sic], an 'other qualified witness' is to be construed broadly." *State v. McCoy*, 2012 WL 1415698, at *5 (citing *U.S. v. Console*, 13 F.3d 641, 657 (3d Cir. 1993)).

4

calibrations, had first-hand knowledge of the numbers she entered into the calibration logs; that the chemist made the records in the regular course of business approximately every 30-45 days; that the calibration logs were regularly kept at the troops until they were taken to Troop 2 for testing; and that the chemist signed the logs contemporaneously with the completion of the calibration checks. Corp. Ripple testified, after looking at the calibration log itself, that the state chemist signed the log related to this matter thirty two minutes after she performed the calibration checks on the Intoxilyzer machine used on Defendant.[10] In *State v. Vickers*, the Court accepted testimony as sufficient to meet the contemporaneous factor when there was testimony that the calibration logs were signed fifty seven minutes after the chemist performed the calibration tests.[11] The Court is therefore satisfied that Corp. Ripple's testimony, for which he relied on the certification log itself, is sufficient to meet the contemporaneous requirement, and also sufficient to consider him an "other qualified witness" to testify to the business records exception to the hearsay rule.

In *McCoy v. State*, the Supreme Court determined that an officer was familiar with the procedures involved in creating the records, even though he had never observed a calibration.[12] In *State v. McCoy*, the Superior Court noted that the officer "was not familiar with the process of calibrating the Intoxilyzer machine; ...was not familiar with how the Intoxilyzer machines are calibrated generally; ...[had] not observed anyone perform a calibration on an Intoxilyzer machine and; ...could not recall whether he observed a calibration at the DUI academy."[13] Corp. Ripple did not have to personally observe a calibration of the Intoxilyzer in order to be considered a qualified witness, but he only had to demonstrate some familiarity with the

---

[10] Corp. Ripple noted that he was familiar with the chemist's signature, as it was distributed to him at the Police Academy.

[11] *Vickers*, 2010 WL 2299001, at *5.

[12] *McCoy v. State*, 2014 WL 1357337, at *2 (Del. Supr. Apr. 3, 2014).

[13] *State v. McCoy*, 2012 WL 1415698, at *2.

5

procedure employed in creating the records.[14] Corp. Ripple testified that the chemist would put a card into the machine, calibrate the machine to get the three readouts (0.00, 0.05, and 0.10), and then staple the card to the calibration logs. This testimony is "sufficient knowledge of the procedure by which the Intoxilyzer records were created,"[15] and therefore the Court will admit the Intoxilyzer report generated for Defendant into evidence.

## PROOF BEYOND A REASONABLE DOUBT THAT MS. MOORE WAS DRIVING UNDER THE INFLUENCE OF ALCOHOL

Under 21 *Del. C.* § 4177(a)(1), "[n]o person shall drive a vehicle [w]hen the person is under the influence of alcohol." The Court looks to the totality of the circumstances when determining whether the State has proven beyond a reasonable doubt that an individual was driving under the influence.[16] The State must prove that the defendant was in control or driving a vehicle while also under the influence of alcohol.[17] "The evidence must show that the person has consumed a sufficient amount of alcohol to cause the driver to be less able to exercise the judgment and control that a reasonably careful person in full possession of his or her faculties would exercise under like circumstances."[18]

---

[14] An officer "must merely have knowledge of the record keeping system and not the calibration process itself. Witnessing a calibration is one way to have knowledge of the record keeping system, but is not an actual requirement under D.R.E. 803(6)." *Id.* at *4.

[15] *McCoy v. State*, 2014 WL 1357337, at *2.

[16] *State v. Smallwood*, 2012 WL 5869624 (Com. Pl. Nov. 9, 2012).

[17] *Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993).

[18] *State v. Mealy*, 2010 WL 175623 (Com. Pl. Jan. 20, 2010) (*quoting Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993)); see 21 *Del. C.* § 4177(c)(5) (stating, "'While under the influence' shall mean that the person is, because of alcohol or drugs or a combination of both, less able than the person would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of a vehicle").

6

Corp. Ripple activated his emergency lights after observing the Defendant driving without headlights. Upon reaching Defendant's vehicle, Corp. Ripple detected a strong odor of alcohol and observed Defendant's bloodshot and glassy eyes. Defendant admitted that she had been drinking prior to driving. Defendant agreed to submit to field sobriety tests, which she subsequently failed, causing Corp. Ripple to transport Defendant to Troop 6 for more testing.

The results of the Intoxilyzer show that Defendant's BAC at the time of her test was 0.118, which was above the legal limit of 0.08. The State has therefore proven beyond a reasonable doubt that Defendant was driving under the influence of alcohol.

### PROOF BEYOND A REASONABLE DOUBT THAT MS. MOORE FAILED TO HAVE TWO LIGHTED HEADLAMPS AT THE FRONT OF HER VEHICLE

Under 21 *Del. C.* § 4352(a), "at least 2 lighted lamps shall be displayed, 1 on each side at the front of every motor vehicle other than a motorcycle or motor-driven cycle, except when such vehicle is parked subject to the regulations governing lights on parked vehicles." Corp. Ripple testified that he initially pulled Defendant over because neither one of her headlights were lit as she drove during the early morning, while it was dark outside. After Corp. Ripple reached her vehicle, Defendant admitted to him that her lights were not working, and he accepted her explanation without further inquiry. Corp. Ripple could not recall if Defendant's rear lights were working, but did note that her brake lights were functional.

The State has proven beyond a reasonable doubt that Defendant violated 21 *Del. C.* § 4352(a) by driving at night without functional headlights.

7

## CONCLUSION

The evidence in the record adduced at trial is that Defendant's headlights failed during her drive home from work. After pulling Defendant over for her failure to use headlights, Corp. Ripple noticed a strong odor of alcohol and Defendant's bloodshot, glassy eyes. Defendant failed both the HGN and walk-and-turn tests, resulting in her arrest. At Troop 6, Defendant voluntarily submitted to the Intoxilyzer test, in which she blew a 0.118. The State has therefore met its burden to prove beyond a reasonable doubt that Defendant drove under the influence of alcohol pursuant to 21 *Del. C.* § 4177(a) and 2 Lighted Lamps Shall be Displayed, 1 on Each Side at the Front of Every Motor Vehicle pursuant to 21 *Del. C.* § 4352(a). Accordingly, the Court finds Defendant Denise R. Moore **GUILTY** of Driving Under the Influence and 2 Lighted Lamps Shall be Displayed, 1 on Each Side at the Front of Every Motor Vehicle. This Judicial Officer shall retain jurisdiction of this case and will schedule it forthwith for sentencing.

**IT IS SO ORDERED this 30th day of June, 2014.**

The Honorable Carl C. Danberg,
Judge

cc:     Diane Healy, Judicial Case Manager