Wayne O. REVEL, Jr., Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 145, 2008.

Supreme Court of Delaware.

Submitted: July 16, 2008.
Decided: Aug. 7, 2008.

Santino Ceccotti, Esquire, Office of the Public Defender, Wilmington, DE, for appellant.

John Williams, Esquire, Department of Justice, Dover, DE, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice:

Wayne O. Revel, Jr. ("Revel"), was indicted for charges resulting from a bank robbery and an attempted bank robbery in New Castle County. He was also indicted for charges resulting from a bank robbery in Kent County. The State subsequently reindicted Revel in order to consolidate both cases. The resulting charges were: two counts of Robbery; one count of Attempted Robbery in the Second Degree; and two counts of Wearing a Disguise During the Commission of a Felony.

The State *nolle prossed* both counts of Wearing a Disguise During the Commission of a Felony. The jury convicted Revel on all three remaining counts in the indictment. The trial judge sentenced Revel as a habitual offender.

In this direct appeal, Revel argues that the trial judge abused his discretion by not declaring a mistrial after a witness for the State impermissibly commented on his Fifth Amendment right to remain silent in front of the jury. We have determined that argument is without merit. Therefore, the judgments of the Superior Court must be affirmed.

## Facts

On September 19, 2006, a Wilmington Trust branch in Kent County, Delaware was robbed of approximately $2,300. On September 22, 2006, a Citizens Bank branch office located in Bear, Delaware was robbed of between $700 and $800. Three days later, a PNC Bank branch in Talleyville, Delaware was nearly robbed. Surveillance footage of each incident revealed the robber to be a white male, wearing slightly oversized clothing, tan boots, and a white baseball cap with a raised white symbol. During each robbery, the robber—who did not wear gloves—handed the bank teller a note that read: "Give me all the money and no dye packs."

Detective David Spicer sent a photograph of the robber, taken by the surveillance cameras at the Wilmington Trust branch, to various news agencies throughout Delaware. After receiving a telephone call that identified the person in the surveillance photograph as Brock Charles ("Charles"), Spicer compiled a six-person photo lineup that included a photograph of Charles. Spicer then showed the photo lineup to the bank tellers who witnessed the Wilmington Trust Bank robbery. Two tellers who had not been specifically approached by the robber picked out Charles' photograph. Lori Erhart ("Erhart"), the teller who was confronted by the robber, also ultimately identified Charles as the offender. The police then obtained an arrest warrant for Charles, who denied any participation in the robberies. After Charles' employer and coworkers confirmed that he had been at work during the Wilmington Trust robbery, the State dropped the charges against him.

A similar photo lineup was shown to Abby Manuel ("Manuel"), a teller present at the Citizens Bank robbery. The man she selected from the photo lineup was William Pruitt ("Pruitt"). The police soon obtained a warrant for Pruitt's arrest and went to his residence. Pruitt's mother and her boyfriend confirmed that the man in the surveillance photograph appeared to be Pruitt. At Pruitt's home, the police found a pair of Timberland boots, oversized jeans, and a white hat with a raised white emblem. Pruitt was arrested, but the charges against him were also later dropped because he provided a partial alibi that accounted for his whereabouts during one of the bank robberies.

After the public news agency WBOC aired the surveillance photograph on television, Kerry Bittenbender ("Bittenbender") contacted the police and informed them that he believed that the man in the picture was Revel. After Dover police Detective David Spicer—who was investigating the September 19, 2006 Kent County bank robbery at Wilmington Trust—received the name of Wayne O. Revel, Jr., as a potential suspect, he contacted Delaware State Police Detective Mark A. Papili, the Detective who was investigating the September 22, 2006, Citizens Bank robbery and the September 25, 2006 PNC attempted robbery. Comparing their information, the two police officers determined that Revel was the common bank robbery suspect in both police agency investigations.

The Delaware State police stopped Revel's 1993 black Isuzu Rodeo motor vehicle on October 8, 2006, in New Castle County. Although Revel was not employed, the police discovered $1,136 cash in his pants pocket. An October 10, 2006 search of Revel's vehicle pursuant to a search warrant revealed a white on white baseball hat in the rear seat and a pair of tan work boots on the right front passenger floorboard.

At trial, Erhart (the Wilmington Trust teller), Manuel (the Citizens Bank teller),

and Nicole Beers (a PNC Bank teller) were unable positively to identify Revel as the robber. During her trial testimony, Manuel maintained that she had correctly identified Pruitt as the person who had robbed the Citizens Bank. Consequently, the State's case focused on the white hat and the substantial amount of cash found on Revel's person. Each of the tellers testified that the hat found in Revel's car looked just like the one worn by the robber.[1]

Detective Spicer, who investigated the Wilmington Trust robbery, and Corporal Anthony Tenebruso, who investigated the PNC bank robbery, also testified at trial. Both stated that, although careful searches for fingerprints were conducted at each crime scene, none of the fingerprints recovered matched those of Revel. Fingerprint testing of the demand notes also could not show conclusively that Revel was the robber.

At the conclusion of the State's case, Revel moved for a judgment of acquittal. Revel argued, among other things, that the State's case consisted entirely of circumstantial evidence, and that two other men had been positively identified by the tellers and had been investigated for the robberies by the police. Revel emphasized that the hat found in his car had not been identified as the exact same one worn by the robber, that the surveillance photos were unclear, that only Bittenbender had identified Revel as the man portrayed in those pictures, and that no fingerprints or any other physical evidence connected Revel to the crimes. The trial judge denied Revel's motion for acquittal, but noted that "[e]verything you say is accurate and is a good argument. And absent the witness Bittenbender, I think you're correct." The jury returned a guilty verdict on all three charges. The trial judge sentenced Revel as a habitual offender.

### Comment on Silence

Revel's sole claim on appeal is that the trial judge erred in denying his motion for a mistrial after Detective Papili impermissibly commented on Revel's constitutional right to remain silent. Detective Papili was the next to last prosecution witness to testify at Revel's trial. Near the conclusion of Detective Papili's cross-examination by Revel's defense attorney, the police officer was asked "... if there was ever an attempt made to have him give a writing example to compare that to the writing on those various demand notes?" Detective Papili responded to this defense inquiry by stating:

> Not that I'm aware of. Detective Potts informed me that he declined to make a statement and asked for an attorney, so there was no other—we wouldn't ask him for a sample of anything or any kind like that. We would do a search warrant.

Following this response, defense counsel requested a sidebar conference and the jury was directed to leave the courtroom. Revel's counsel stated to the trial judge:

---

1. Erhart testified that Revel's hat, "a white baseball hat with New York [written in white] on the front," was identical to the hat worn by the robber of the Wilmington Trust Bank. Manuel also testified that Revel's hat might have been the same as the hat that the Citizens Bank robber wore "because of the detail on the hat," but Manuel could not be sure that it was the exact same hat. Beers testified that during the PNC robbery she noticed the raised markings on the hat, but "was too far away to read exactly what was written." When asked whether Revel's hat was an exact replica of the one from the robbery, Beers responded, "I couldn't tell you how many hats are out on the market, but I remember exactly the things coming off of the hat. There was a sticker, a silver sticker on the hat, exactly like [Revel's] hat."

"I basically think it was a legitimate question, and he commented on *Miranda*. I think it's a mistrial situation." The trial judge denied the defense mistrial motion and stated: "I'll overrule the motion for a mistrial. I think that was an inadvertent and really inoffensive response to the question." Following a discussion with both counsel as to the appropriate wording of a curative instruction, the jury reentered the courtroom. In part, Revel's jury was instructed, as follows:

> As you may know, Mr. Revel, like any other accused person in the United States, has the absolute right to remain silent and to have a lawyer present. In fact, he is specifically told that by the police. So of course, absolutely no inference of any kind can be drawn by you concerning Mr. Revel's failure to make a statement at any time in this entire proceeding.

On appeal, Revel argues that this curative instruction was insufficient and that the trial judge abused his discretion in not granting the defense motion for a mistrial. Specifically, Revel contends that Detective Papili's answer was an impermissible comment on his "Fifth Amendment right of silence."

### Standard of Review

▮ Whether a mistrial should be declared lies within the trial judge's discretion.[2] This grant of discretion recognizes the fact that a trial judge is in the best position to assess the risk of any prejudice resulting from trial events.[3] When a trial judge rules on a mistrial application, that decision should be reversed on appeal only if it is based upon unreasonable or capricious grounds.[4]

▮ "A trial judge should grant a mistrial only when there is 'manifest necessity' or the 'ends of public justice would be otherwise defeated.' "[5] The remedy of a mistrial is "mandated only when there are 'no meaningful and practical alternatives' to that remedy."[6] A trial judge's prompt curative instructions "are presumed to cure error and adequately direct the jury to disregard improper statements."[7] Juries are presumed to follow the trial judge's instructions.[8]

### Pena's *Four Factors*

▮ The right to remain silent is derived from the Fifth Amendment's privilege against self-incrimination.[9] "While

2. See *Chambers v. State*, 930 A.2d 904, 909 (Del.2007); *Guy v. State*, 913 A.2d 558, 565 (Del.2006); *Brown v. State*, 897 A.2d 748, 752 (Del.2006); *Flowers v. State*, 858 A.2d 328, 332–33 (Del.2004); *Taylor v. State*, 827 A.2d 24, 27 (Del.2003).

3. See *Brown v. State*, 897 A.2d at 752; *Flowers v. State*, 858 A.2d at 334–35; *Pena v. State*, 856 A.2d 548, 550 (Del.2004); *Ashley v. State*, 798 A.2d 1019, 1022 (Del.2002); *Hope v. State*, 570 A.2d 1185, 1189 (Del.1990).

4. See *Zimmerman v. State*, 628 A.2d 62, 65 (Del.1993); *Chavin v. Cope*, 243 A.2d 694, 699 (Del.1968); *Pitts v. White*, 109 A.2d 786, 788 (Del.1954).

5. *Brown v. State*, 897 A.2d at 752 (quoting *Fanning v. Superior Court*, 320 A.2d 343, 345 (Del.1974)). See also *Steckel v. State*, 711 A.2d 5, 11 (Del.1998); *Bailey v. State*, 521 A.2d 1069, 1075–78 (Del.1987).

6. *Dawson v. State*, 637 A.2d 57, 62 (Del.1994) (quoting *Bailey v. State*, 521 A.2d at 1077). See also *Flowers v. State*, 858 A.2d at 335.

7. *Pena v. State*, 856 A.2d at 551. See also *Steckel v. State*, 711 A.2d at 11; *Sawyer v. State*, 634 A.2d 377, 380 (Del.1993); *Zimmerman v. State*, 628 A.2d at 66, *Pennell v. State*, 602 A.2d 48, 52 (Del.1991).

8. *Pena v. State*, 856 A.2d at 551–52; *Fuller v. State*, 860 A.2d 324, 328–29 (Del.2004); *Shelton v. State*, 744 A.2d 465, 483 (Del.2000).

9. *Miranda v. Arizona*, 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the State may not put a penalty on the exercise of a constitutional right, 'every reference to the exercise of the right to remain silent [does not] mandate ... reversal.' "[10] In *Pena*,[11] this Court enumerated four factors to consider in deciding whether a mistrial should be granted in response to an allegedly prejudicial remark by a witness: first, nature and frequency of the offending comment; second, the likelihood of resulting prejudice; third, closeness of the case; and fourth, the adequacy of the trial judge's actions to mitigate any potential prejudice.[12]

In this appeal, the State argues that the brief reference by Detective Papili to Revel previously asserting his right to remain silent and invoking his right to counsel was the result of defense cross-examination and not questioning by the State. Therefore, the four factor test of *Pena* is the more appropriate analytical paradigm to apply rather than the analysis, advocated by Revel, that we applied to State actions in *Hughes v. State*[13] and *Hunter v. State*.[14] We agree with the State's position. Although Detective Papili was a State witness, his challenged comment did not result from any action by the prosecutor. Accordingly, we will apply the four-part *Pena* analysis in this appeal, rather than the analysis prescribed by *Hughes* and *Hunter*.

### Pena *Analysis Applied*

 With respect to the first *Pena* factor, "the nature, persistency, and frequency of the outburst", there was only one isolated reference to Revel exercising his Fifth Amendment right to remain silent. That occurred during the cross-examination of Detective Papili, a prosecution witness, by the defense. During the State's questioning of Detective Papili, no reference to Revel's exercise of his right to remain silent were solicited or accidentally occurred.[15] The trial judge found that Detective Papili's comment was "an inadvertent and really inoffensive response to the question" posed by the defense counsel regarding the absence of a writing sample. Detective Papili's response was that Revel had not been asked to provide a writing sample, because another detective had informed Detective Papili that Revel "declined to make a statement and asked for

10. *Lewis v. State*, 626 A.2d 1350, 1358 (Del. 1993) (quoting *Shantz v. State*, 344 A.2d 245, 247 (Del.1975)).

11. *Pena v. State*, 856 A.2d at 550–51.

12. *Id.* (citing *Griffith v. State*, 2003 WL 1987915, at *4 (Del.2003); *Taylor v. State*, 690 A.2d 933, 935 (Del.1997)).

13. *Hughes v. State*, 437 A.2d 559, 572 (Del. 1981).

14. *Hunter v. State*, 815 A.2d 730, 737–38 (Del. 2002). *See also Justice v. State*, 947 A.2d 1097, 1102 n.23 (Del. 2008) (discussing but not reaching the *Pena* issue decided here).

15. Before Detective Papili's testimony, Detective Spicer testified as a prosecution witness. During the State's examination of Detective Spicer, the following exchange occurred:

Q. In October, the defendant was taken into custody?
A. That's correct.
Q. Did you travel up to New Castle County and make contact with the defendant up there?
A. I did. It was in the evening hours. I responded to Troop No. 2 and that's where the defendant—
The exchange was interrupted by defense counsel's request for a sidebar conference. Revel's counsel stated that "if the State continues with this line of questioning, I think we're going to walk into reversible error, if the police officer makes a comment that he invoked Miranda. He can't do that. That's impermissible." The prosecution represented to the trial judge that the questioning would not go in that direction and the trial proceeded without any references to Revel's silence *until Detective Papili's testimony.*

an attorney, so ... we wouldn't ask him for a sample of anything or any kind like that." That statement reflected Detective Papili's (mistaken) belief that a defendant who has asserted his rights under *Miranda* cannot be required to provide a handwritten exemplar.[16] Thus, the only reference to Revel's exercise of his right to remain silent was marginal and was made as part of an explanation for the police's failure to ask Revel to give a writing sample.

■ The second *Pena* inquiry is whether that unsolicited explanation had a prejudicial effect. The United States Constitution prohibits references to post-*Miranda* silence, both as part of the prosecution's case-in-chief and for purposes of impeaching a defendant's credibility.[17] Although neither circumstance is applicable here, the United States Supreme Court reasoned in *United States v. Hale* that a defendant's post-*Miranda* silence during a police interrogation at the time of the arrest "has a significant potential for prejudice."[18] This Court relied upon the *Hale* rationale in *Bowe v. State.*[19] In both *Hale* and *Bowe,* the improper inquiry regarding the defendant's silence arose during the prosecution's questioning of the defendant. We recognize, however, that the same potential for prejudice can be created—even though inadvertently and in response to a question by the defense counsel—by a third party witness' reference to the defendant's exercise of his right to remain silent.

The third *Pena* factor is the closeness of the case. The record reflects that no eye witnesses or physical evidence linked Revel to the bank robberies. The State's case included the hat and the boots found in Revel's car. Revel argues that those items represent a generic type of clothing, as demonstrated by the fact that a previous suspect (Pruitt) also possessed a white hat with a raised white emblem and Timberland boots. The trial judge stated that "absent the witness Bittenbender" he would consider granting Revel's motion for a judgment of acquittal. Bittenbender, however, was not the only person who could identify Revel as being the man portrayed in the surveillance photographs. Because those photographs were introduced as evidence at trial, the jury could compare those pictures with Revel as he was sitting before them. Accordingly, the jurors could see the image of the robber and compare that image with Revel's physical appearance in the courtroom.

The final *Pena* factor is whether the trial judge attempted to mitigate any resulting prejudice. The trial judge's curative instruction to the jury was as follows:

> Detective Papili ... referr[ed] to statements by Mr. Revel. As you may know, Mr. Revel, like any other accused person in the United States, has the absolute right to remain silent and to have a

---

16. In *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the United States Supreme Court held that the taking of exemplars of a defendant's handwriting, containing no testimonial or communicative matters, does not violate the defendant's Fifth Amendment privilege against self-incrimination. In *State v. Cooke,* 914 A.2d 1078 (Del.Super.2007), the Superior Court adopted the *Gilbert* holding but held that the Fifth Amendment right against self-incrimination was violated where a police officer *dictated* to the defendant what to write for purposes of obtaining a writing sample.

17. *United States v. Hale,* 422 U.S. 171, 180, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Doyle v. Ohio,* 426 U.S. 610, 611, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

18. *United States v. Hale,* 422 U.S. at 180, 95 S.Ct. 2133.

19. *Bowe v. State,* 514 A.2d 408, 411 (Del. 1986).

lawyer present. In fact, he is specifically told that by the police. So of course, absolutely no inference of any kind can be drawn by you concerning Mr. Revel's failure to make a statement at any time in this entire proceeding.

We have held that an "[e]rror can normally be cured by the use of a curative instruction to the jury, and [that] jurors are presumed to follow those instructions."[20] The State argues that, by promptly informing the jury that Revel had a constitutional right to remain silent of which he was made aware, and that no inference could be drawn by the jury from Revel's exercise of that right, the curative instruction efficiently and adequately addressed the concern without unduly emphasizing the subject.

### Mistrial Properly Denied

Having applied the four *Pena v. State*[21] factors to the facts of Revel's case, we hold that the trial judge did not abuse his discretion in denying the defense motion for a mistrial. First, Detective Papili's reference to Revel's assertion of his *Miranda* rights was not the result of any conduct by the trial prosecutor. The comment was brief, unrepeated, and the trial judge found the remark to be "inadvertent." Second, the likelihood of resulting prejudice was minimal, because when Revel later elected not to testify at his jury trial, it was obvious that he was asserting his right to remain silent about the bank robbery allegations. Third, the record reflects that this was not a close case. The jury had three bank surveillance photographs of the robber showing the perpetrator's face and could compare those photos to Revel's physical appearance. In addition to this photographic evidence, the State demonstrated that the distinctive clothing worn by the bank robber in the three incidents matched the items of apparel recovered by the police from Revel's motor vehicle. The State also relied upon evidence that, although Revel was unemployed, he had over $1,100 cash in his pockets when arrested shortly after the last bank robbery attempt. Fourth, the trial judge's curative instructions to the jury was prompt and complete. Under these circumstances, the record reflects no abuse of discretion in denying Revel's motion for a mistrial.

### Conclusion

The judgments of the Superior Court are affirmed.

---

**20.** *Guy v. State*, 913 A.2d 558, 565–66 (Del. 2006). *See also Pena v. State*, 856 A.2d 548, 551 (Del.2004) (holding that "[p]rompt jury instructions are presumed to cure error and adequately direct the jury to disregard improper statements"); *Starling v. State*, 882 A.2d 747, 755 (Del.2005) (noting, on appeal from a death sentence, that "if [a witness'] testimony created prejudice that rendered all curative measures inadequate, a mistrial would be the appropriate remedy," but finding that the curative instruction given by the trial judge neutralized any potential prejudice to the defendant stemming from a detective's allegedly improper commentary on the defendant's Fifth Amendment right to remain silent where the *sua sponte* curative instruction told the jury to disregard that reference).

**21.** *Pena v. State*, 856 A.2d 548, 550–51 (Del. 2004).