Corey SMITH, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 339, 2008.

Supreme Court of Delaware.

Submitted: Dec. 11, 2008.

Decided: Dec. 18, 2008.

James J. Haley, Jr., Esquire, Ferrara & Haley, Wilmington, DE, for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, DE, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Corey Smith, appeals from his Superior Court judgments of conviction for Attempted Robbery in the First Degree, Assault in the Second Degree, and Conspiracy in the Sec-

ond Degree. Smith contends that the Superior Court abused its discretion when it denied his request for a mistrial following a witness's references to Smith's criminal history and to plea negotiations between the State and Smith.

We have concluded that Smith's arguments are without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

On March 15, 2007, Noe Raza–Martinez was shot in the abdomen as he was returning from work to his home in the Lancaster Court Apartments. He was walking toward his building when he was grabbed from behind by two men. While Raza–Martinez struggled with the two men, one of them pulled out a pistol and shot Raza–Martinez in the abdomen. The assailants then fled. Because Raza–Martinez's wound was not life threatening, he was treated and released from the hospital that night.

Raza–Martinez was unable to identify the men who attacked him, but police found a baseball cap at the scene of the assault. After searching the videos from the surveillance cameras of nearby businesses, police identified Kenneth Butcher as a suspect along with another unknown man who was wearing a baseball cap similar to the one found at the scene. Butcher was brought in for questioning and identified Smith as the unknown man in the baseball cap. DNA evidence recovered from the baseball cap, however, could not conclusively corroborate this identification. Butcher also admitted that he and Smith had tried to rob Raza–Martinez and that Smith was the one who had shot Raza–Martinez.

On April 30, 2007, the State filed an indictment charging Butcher and Smith with Attempted Robbery in the First De-

gree, two counts of Possession of a Firearm During the Commission of a Felony, Assault in the Second Degree, Possession of a Deadly Weapon by a Person Prohibited, and Conspiracy in the Second Degree. On January 7, 2008, Butcher pled guilty to Assault in the Second Degree and Conspiracy in the Second Degree. As a condition of his plea agreement, Butcher was required to testify truthfully as the State's witness at Smith's trial. On January 24, 2008, Smith's jury trial commenced in the Superior Court.

At trial, Butcher described one of several conversations that allegedly occurred between Smith and Butcher while they were both detained at the Howard R. Young Correctional Center prior to trial. Butcher testified as follows:

Q: After that letter, did you and Corey have more discussions about the case?

A: After that letter, he was, like, "Yo, man, you going to confess? They trying to get me habitual." I'm like, "Hmm?" He said, "They trying to get me habitual." I'm like, "I'm not taking all the charges. I already got enough charges on me."

Following this testimony, defense counsel objected to Butcher's statement that Smith said he was a habitual criminal and requested a mistrial, which the trial judge denied. The trial judge also declined to give an immediate curative instruction because she wanted to avoid emphasizing the comment. Instead, the trial judge decided to reemphasize in the final instructions that the jury was not to consider penalties during its deliberations. The judge reasoned: first, the jurors in all likelihood did not know what the reference to "habitual" meant; second, according to Butcher, Smith did not say that he was habitual but that "they trying to get me habitual;" and third, the jury had already been instructed

not to consider the consequences of their verdict.[1]

After this objection and side bar conference, Butcher resumed his testimony and described another communication with Smith:

Q: Have you had any communication with Corey at all since being transferred to DCC?

A: Yes.

Q: You have?

A: Yes.

Q: And what was that communication?

A: It was downstairs.

Q: Okay. When?

A: Wednesday, when he came through, changing his clothes.

Q: The 23rd of January, this past Wednesday?

A: Yes.

Q: What was that communication?

A: I said, "What they offer you?" He said, "Ten"—

Defense counsel again objected on grounds that the testimony was inadmissible evidence of plea negotiations and, even if admissible, was unduly prejudicial to Smith. Smith's trial attorney did not request a mistrial at that time. In response to the objection, the trial judge gave an immediate curative instruction that any consideration of a plea or offer is irrelevant and improper for the jury to consider, to wit:

The Court: I have sustained the objection and I have some curative instructions to give to you, so I want you to listen very carefully.

To the extent there has been a suggestion of any sort that the defendant—

not Mr. Butcher, but the defendant was offered a plea, you are to disregard that in its entirety. I do not want you to speculate about whether that occurred. I don't want you to speculate whether he accepted or rejected it. I don't want you thinking about that whatsoever in your deliberations or as you hear the evidence.

Do you understand that?

Jurors: Yes.

The Court: That would be a totally irrelevant consideration for reasons which I'm not going to bore you with. There's a whole host of reasons why it would be impermissible for you, as finders of the fact, to worry or consider that.

Does everyone understand?

Jurors: Yes.

The Court: Can everyone adhere to that curative instruction?

Jurors: Yes.

. . . .

The Court: Just a few last things.

Commensurate with that instruction, let me remind you, because it's very important, as I told you in voir dire, that someone accused of a crime in this nation is innocent unless and until proven guilty with proof beyond a reasonable doubt. Therefore, the presumption of innocence cloaks everyone coming into this courtroom. And it is only after presentation of all the evidence and you deliberate and you find the these facts and apply the law that I give you, it is you who will determine whether the State has met its burden of proving the elements necessary to find guilt. And everyone said in the beginning of voir dire they could adhere to that.

---

1. The instruction was occasioned by Butcher's testimony regarding his plea agreement. The jury knew, for example, that the State dropped the two counts of Possession of a Firearm During the Commission of a Felony and that each carried a mandatory minimum sentence of three years and a maximum sentence of twenty-five years.

Do you still feel capable of adhering to that?

Jurors: Yes.

On January 29, 2008, the jury returned a verdict finding Smith guilty of Attempted Robbery in the First Degree, Assault in the Second Degree, and Conspiracy in the Second Degree. The jury found Smith not guilty of the two counts of Possession of a Firearm During the Commission of a Felony. On February 7, 2008, following a bench trial, Smith was found not guilty of Possession of a Deadly Weapon by a Person Prohibited. Smith was sentenced on June 20, 2008, and this direct appeal followed.

### Smith's Contentions

█ Smith argues that Butcher's testimony that Smith said, "They trying to get me habitual," was inadmissible. Smith contends that the jury would understand that the word "habitual" was shorthand for "habitual offender" and that Butcher was, in effect, telling the jury that Smith was a career criminal. As a result, Smith claims that evidence of his criminal past was introduced in violation of Delaware Rule of Evidence 404(a).[2]

Smith also argues that Butcher's testimony that Butcher asked Smith what the State offered him in the plea negotiations and Smith replied, "Ten," was inadmissible. Smith claims that this evidence of plea negotiations was introduced in violation of Delaware Rule of Evidence 410.[3] Smith contends that the trial judge should have granted a mistrial because of these comments.[4]

### Standard of Review

█ We review a trial judge's decision to grant or deny a mistrial for abuse of discretion.[5] "A trial judge should grant a mistrial only when there is 'manifest necessity' or the 'ends of public justice would be otherwise defeated.'"[6] The remedy of a mistrial is "mandated only when there are 'no meaningful and practical alternatives' to that remedy."[7] A trial judge's prompt curative instructions "are presumed to cure error and adequately direct the jury to disregard improper statements."[8] Juries are presumed to fol-

---

**2.** D.R.E. 404(a). Rule 404(a) provides, in relevant part: "Evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. . . ."

**3.** D.R.E. 410. Rule 410 provides, in relevant part: "Except as otherwise provided in this rule, evidence of a plea of guilty later withdrawn with court permission, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer."

**4.** While defense counsel requested a mistrial after the first objection, it is not clear that the request was renewed after the second objection. Regardless, given our outcome here, we need not address whether it is properly reviewed under the plain error standard.

**5.** *See Revel v. State*, 956 A.2d 23, 27 (Del. 2008); *Chambers v. State*, 930 A.2d 904, 909 (Del.2007); *Guy v. State*, 913 A.2d 558, 565 (Del.2006); *Brown v. State*, 897 A.2d 748, 752 (Del.2006); *Flowers v. State*, 858 A.2d 328, 332–33 (Del.2004); *Pena v. State*, 856 A.2d 548, 550 (Del.2004).

**6.** *Brown v. State*, 897 A.2d at 752 (quoting *Steckel v. State*, 711 A.2d 5, 11 (Del.1998); *Fanning v. Superior Court*, 320 A.2d 343, 345 (Del.1974)).

**7.** *Dawson v. State*, 637 A.2d 57, 62 (Del.1994) (quoting *Bailey v. State*, 521 A.2d 1069, 1077 (Del.1987)).

**8.** *Revel v. State*, 956 A.2d at 27, *Pena v. State*, 856 A.2d at 551. *See also Steckel v. State*, 711 A.2d at 11; *Sawyer v. State*, 634 A.2d 377, 380 (Del.1993).

low these instructions.[9]

In *Pena v. State*,[10] we articulated a four-part analysis to determine whether a witness's unsolicited, prejudicial comments require a mistrial. This analysis considers: (1) the nature and frequency of the comments; (2) the likelihood of resulting prejudice; (3) the closeness of the case; and (4) the sufficiency of the trial judge's efforts to mitigate any prejudice.[11] We will apply that analysis to the facts of Smith's case.

First, the nature and frequency of the comments do not require a mistrial. The two disputed comments touched on sentencing consequences and one related to a rejected plea offer. Both comments were fleeting, unsolicited, and reflect Smith's own words. Moreover, as the trial judge observed, it is questionable whether Butcher's one-word references to "habitual" and "ten" even registered with the jury or conveyed any meaning if they did register. As a result, the first *Pena* factor militates against granting a mistrial.

Second, the likelihood of resulting prejudice from these comments was slight. As to the testimony regarding Smith's status as a habitual offender, the State did not assert that Smith was a habitual offender. Rather, the most that the jury could infer from the comment was that Smith told Butcher that the State was trying to make him a habitual offender. As to the testimony regarding the plea negotiation, from the fact that Smith was offered and re-fused a plea, a juror would be just as likely to infer that Smith was innocent as that he was guilty.[12] Furthermore, during his cross-examination of Butcher the defense counsel made the jury aware that the maximum sentence both Butcher and Smith faced was at least eighty-three years and that, by pleading guilty, Butcher faced only a maximum of ten years in prison. This testimony reduced the prejudicial impact, if any, of the jury's knowledge of a ten-year plea offer. As a result, the second *Pena* factor also militates against granting a mistrial.

Third, this case was close in that it turned on Butcher's credibility. Because Raza–Martinez could not identify his attacker and the DNA evidence from the baseball cap was inconclusive, Butcher's identification of Smith as the shooter was the key to the State's case. The prosecutor admitted prior to trial that the State could not proceed without Butcher's testimony. Thus, if the jury disbelieved Butcher, then the State had no case against Smith.[13] Because Butcher's testimony about Smith's statements tended to bolster Butcher's testimony that Smith shot Raza–Martinez, the third *Pena* factor militates in favor of a mistrial as well.

Fourth, the trial judge's instructions to the jury were sufficient to mitigate any prejudice that may have arisen. As to Butcher's "habitual" comment, the trial judge declined to give an immediate curative instruction because it would have re-

9. *Revel v. State*, 956 A.2d at 27; *Pena v. State*, 856 A.2d at 551–52.

10. *Pena v. State*, 856 A.2d at 550–51.

11. *Id.* (citing *Griffith v. State*, 2003 WL 1987915, at *4 (Del. Apr. 28, 2003); *Taylor v. State*, 690 A.2d 933, 935 (Del.1997)).

12. *See, e.g.*, *U.S. v. Biaggi*, 909 F.2d 662, 690–91 (2d Cir.1990) (discussing evidence of defendant's rejection of immunity or plea offers as probative of innocence); *Thompson v. Borg*, 74 F.3d 1571, 1579–80 (9th Cir.1996) (discussing prejudicial effect of evidence that plea was entered and withdrawn and noting "inevitable human tendency" to believe that innocent people do not plead guilty).

13. *Chao v. State*, 604 A.2d 1351, 1363 (Del. 1992).

peated one already given and draw more attention to the comment. In the jury instructions at the close of evidence, however, the judge reemphasized that the jury was not to consider penalties and consequences. As to Butcher's "plea negotiation" comment, the trial judge gave an immediate curative instruction, following a brief fifteen minute recess, warning the jury that they were to disregard the statement entirely. Presumably, the jurors followed these instructions.[14] Therefore, in the context of each statement, the record reflects that the trial judge's instructions were sufficient to mitigate any prejudice that may have arisen because of Butcher's statements. As a result, the fourth *Pena* factor militates against mistrial.

### Conclusion

Neither "manifest necessity" nor the "ends of public justice" warranted a mistrial in Smith's case. The trial judge's instructions cured any prejudice that may have arisen as a result of Butcher's references to Smith's criminal history and to plea negotiations between the State and Smith. After applying the *Pena* factors to Smith's case, we hold that the Superior Court's decision to deny Smith's request for a mistrial was not an abuse of discretion. Accordingly, the judgments of the Superior Court are affirmed.

14. *Claudio v. State,* 585 A.2d 1278, 1281 (Del. 1991).