IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMAIEN MONROE, | § | |
| | § | No. 340, 2014 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware, in and for |
| STATE OF DELAWARE, | § | New Castle County |
| | § | |
| Plaintiff Below, | § | Cr. I.D. No. 0601021343A |
| Appellee. | § | |

Submitted: February 11, 2015
Decided: March 25, 2015

Before **STRINE** Chief Justice, **HOLLAND**, and **VALIHURA**, Justices.

**O R D E R**

This 25th day of March 2015, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)     Defendant-below, Jamaien Monroe ("Monroe"), raises three claims on appeal.  He argues that the Superior Court erred when it held that his trial counsel was not ineffective for:  (1) failing to renew the motion to exclude testimony, sever charges, and exclude evidence concerning an uncharged robbery; (2) failing to request a mistrial when a key State's witness ceased testifying and asserted his Fifth Amendment right against self-incrimination; and (3) failing to request a mistrial when the jury found newly discovered evidence that was not admitted at trial. We disagree and for the reasons stated herein, AFFIRM.

(2)     The facts underlying the issues on appeal concern an uncharged attempted robbery of Andre Ferrell ("Ferrell") allegedly by Monroe, followed by Monroe's alleged attempted murder of Ferrell the next day, and then Ferrell's murder by Monroe fifteen months later.

(3)     Ferrell, Ronald Wright ("Ronald"), Jonathan Wisher ("Jonathan") and Sal (last name unknown), went to the G&P Deli near 28th and Market Streets in Wilmington.  As Ferrell and Ronald walked towards the deli, they passed Monroe, Kason Wright ("Kason") and an unknown individual.  Ferrell allegedly got into a struggle with Monroe and Ronald during an attempt to steal Ferrell's necklace.  No criminal charges were filed concerning this incident.

(4)     The following day, around 12:30 p.m., Ferrell, Ronald, Tony Wisher ("Tony"), and Sal were driving in Wilmington.  After dropping off Tony and picking up his brother Aaron Mummert ("Mummert"), Ferrell drove to the area of 23rd and Carter Streets.  A green Suburban SUV was parked on the left sidewalk of the street.  Some of the occupants in Ferrell's car saw Monroe in the backseat of the Suburban holding a .38 caliber revolver.  At this time, an individual named "Brownie" came out into the street.  Ferrell stopped to speak with Brownie.  While Ferrell and Brownie were talking, Monroe allegedly fired five or six shots towards Ferrell's vehicle.  Ferrell was shot in the back.  Ferrell drove to his grandmother's house, and from there, he was taken to the hospital.  Warrants were issued for

2

Monroe's arrest for attempted murder, but efforts to apprehend him were unsuccessful.

(5) Fifteen months later, on the evening of April 2, 2007, Ferrell, his girlfriend, Shameka Brown ("Brown"), and his son went to the Village of Crofton in Newark, Delaware, to pick up their daughter. While driving, Brown noticed her co-worker, Ronise Saunders ("Saunders"), driving a later-model, boxed-shaped, white car. After acknowledging each other, Saunders drove towards the Lexington Green Apartments where she lived, and Ferrell continued on towards the Village of Crofton.

(6) After picking up their daughter, Ferrell and Brown went to Derrs' Market, located in the Taylor Towne Shopping Center in Newark, Delaware.[1] Driving into the parking lot of the shopping center, Ferrell and Brown saw Saunders' car, being driven by Monroe, backing out of a parking space. Ferrell parked his car and went into Derrs while Brown stayed in the car with the children. Ferrell exited Derrs after about five minutes and returned to the car, standing outside of the driver's side with the door open, talking to Brown. At this time, Brown saw a black male wearing a white t-shirt, blue jeans, and a partially red-colored baseball hat, holding a gun, approach Ferrell from behind. That man shot

---

[1] This shopping center is located across the street from the Lexington Green Apartments.

Ferrell four or five times. After the shooting, the man ran towards the Lexington Green Apartments.

(7) Officer Jane Paolo ("Officer Paolo") was the first police officer to arrive on the scene. She attempted CPR on Ferrell but confirmed that he had no pulse. Officer Paolo took Brown and the children to her patrol vehicle. Brown told the officer that the shooter looked like Monroe.

(8) A witness, Katharine Meier ("Meier"), was exiting her car at the time of the shooting. She told police that she heard five loud bangs from the area in front of Derrs. She saw a man backing away, and then walking quickly through the parking lot. Meier described the man as black, medium-tall, husky, with a pudgy face, wearing a white t-shirt, blue jeans, and a red and white baseball hat. Two other witnesses, Kim Klosowski ("Klosowski") and Diamonyell Bateman ("Bateman") were sitting outside of the Lexington Green Apartment complex at the time of the homicide. Klosowski told police she saw a black man, wearing a white t-shirt, blue jeans and a red baseball hat, running through the apartment complex into the parking lot of Derrs. Approximately thirty seconds later, Klosowski saw that same person running back through the apartment complex. Bateman also told police that she heard gunshots and saw a black man wearing a white t-shirt and red baseball hat run from Derrs.

4

(9)    Officer Paolo transported Brown to the police station and left her with Detective Smith.  Officer Paolo told the detective about Brown's statement that the shooter looked like Monroe.  Brown selected Monroe as the shooter out of a photographic lineup.  Two days later, Meier also identified Monroe out of a lineup as most likely being the man she saw in the parking lot outside of Derrs and running towards the Lexington Green Apartments.  Videotape from Derrs' Market showed a man who looked like Monroe in the store before Ferrell arrived.[2]  During a search of Saunders' apartment, the police found a jacket fitting the description of the one seen in the videotape.  Saunders owned a 1987 white, four-door Mercury Marquis.  This car was found abandoned in Chester, Pennsylvania, on April 10, 2007.  Police could not locate Saunders before the February 2009 trial.

(10)   Prior to the trial, Monroe filed a motion *in limine* to exclude evidence of the uncharged attempted robbery of Ferrell in January 2006.  The trial court denied this motion, finding that the evidence of Monroe's role in the necklace robbery was "plain, clear and conclusive" and could tend to show that Monroe was involved in the robbery the day before the alleged attempted murder, and thus, had a motive to murder Ferrell.

---

[2] That man was wearing a black and red jacket in the video.

(11) In April 2009, Monroe filed a motion for a new trial. This motion was denied in May 2010.[3] Monroe then filed a direct appeal to this Court. In September 2011, we affirmed the judgment of the trial court.[4] Monroe now seeks post-conviction relief.

(12) We review a trial court's denial of a motion for post-conviction relief based on a claim of ineffective assistance of counsel for an abuse of discretion.[5] "[W]e carefully review the record to determine whether 'competent evidence supports the court's findings of fact and whether its conclusions of law are not erroneous.'"[6] Constitutional questions and other questions of law are reviewed *de novo*.[7]

(13) To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) "that counsel's representation fell below an objective standard of reasonableness;" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[3] *Monroe v. State*, 2010 WL 1960123 (Del. Super. May 14, 2010).

[4] *Monroe v. State*, 28 A.3d 418, 422 (Del. 2011).

[5] *Outten v. State*, 720 A.2d 547, 551 (Del. 1998) (citing *Shockley v. State*, 565 A.2d 1373, 1376 (Del. 1989); *Albury v. State*, 551 A.2d 53, 60 (Del. 1988)).

[6] *Id.* (quoting *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996))

[7] *Purnell v. State,* 106 A.3d 337 (Del. 2014).

6

different."[8]  The *Strickland* standard is highly demanding and there is a "strong presumption that the representation was professionally reasonable."[9]  When evaluating trial performance under the first prong, courts make every effort to "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time."[10]  To establish prejudice under the second prong, a defendant must "make concrete allegations" of actual prejudice before having a hearing on the matter and must substantiate the allegations.[11]  Because an appellant must prove both *Strickland* prongs, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[12]  Instead, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."[13]

(14)   We turn now to Monroe's first claim on appeal.  Monroe argues that counsel was ineffective for failing to renew motions to exclude testimony and

---

[8]*Strickland v. Washington*, 466 U.S. 668, 694 (U.S. 1984) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.").

[9] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1995).

[10] *Strickland*, 466 U.S. at 689.

[11] *Skinner v. State*, 1994 WL 91138, at *1-2 (Del. Mar. 3, 1994).

[12] *Strickland*, 466 U.S. at 697.

[13] *Id.*

7

evidence regarding an uncharged robbery, and for failing to renew the motion to sever the attempted murder and murder charges. He contends that Kason's refusal to testify should preclude the admission of the robbery evidence. Monroe filed a motion *in limine* to exclude the evidence of the attempted robbery and testimony of Jonathan, Ronald and Kason. In a videotaped out-of-court statement, Kason had identified Monroe as the being involved in the attempted robbery of Ferrell. This statement was introduced into evidence at the *in limine* hearing, pursuant to 11 *Del. C.* § 3507. Jonathan and Ronald, however, did not directly identify Monroe as being involved in the robbery during their pre-trial testimony. Based upon the combined testimony of Jonathan, Ronald and Kason, the trial court determined that the evidence pertaining to the uncharged attempted robbery was supported by "plain, clear and conclusive evidence." Accordingly, the trial court denied the motion *in limine,* and ruled that the attempted robbery would be admissible as evidence of motive during Monroe's trial for the attempted murder and actual murder of Ferrell.

(15)   At trial, Jonathan and Ronald testified consistently with their pretrial testimony at the hearing on Monroe's motion *in limine.* But when Kason began to testify at trial, he suddenly ceased testifying on the stand and invoked his Fifth Amendment rights. Since Kason did not testify to the substance of the issues, his videotaped statement to the police was inadmissible at trial.

(16)   Following Monroe's conviction for Ferrell's murder, Monroe moved for a new trial, asserting that the jury did not hear "plain, clear and conclusive" evidence of his prior uncharged attempted robbery, and therefore, no evidence of that crime should have been admitted at trial.  The trial court denied the motion for a new trial, ruling that even without the testimony of Kason, the testimony of Jonathan and Ronald was "plain, clear and conclusive" evidence of Monroe's motive for the attempted murder and the actual murder of Ferrell.[14]  On direct appeal to this Court and after this Court's *de novo* review, we held that even without the testimony of Kason, the eyewitness testimony of Jonathan and Ronald constituted plain, clear and conclusive circumstantial evidence of Monroe's attempt to rob Ferrell, and that, therefore, the evidence of the attempted robbery was properly admitted at trial.[15]

(17)   Monroe now argues that trial counsel was ineffective because counsel should have cross-examined Kason after he invoked his Fifth Amendment rights and refused to testify.  Monroe contends that because trial counsel failed in this regard, the Superior Court denied his motion for a new trial.  Additionally, Monroe argues that when Kason failed to testify, his trial counsel should have immediately

---

[14] *Monroe*, 28 A.3d at 422.

[15] *Id.*, at 430-31.  Monroe was found not guilty of any of the charges stemming from the January 26, 2006 shooting of Ferrell.

requested a mistrial or moved to have the testimony from Jonathan and Ronald excluded.

(18) Before considering the merits of Monroe's claim under *Strickland*, we must determine whether Monroe's claim is procedurally barred. This Court, on Monroe's direct appeal from a denial of a motion for a new trial, found that "the record supports the Superior Court's finding that [Jonathan] Wisher and Ronald Wright's eyewitness testimony constituted plain, clear, and conclusive *circumstantial* evidence of Monroe's attempt to rob Ferrell."[16] Because the ineffective assistance of counsel claim and his motion for a new trial are premised upon the same underlying issue, namely, whether the past bad act evidence was properly admitted, we agree with the Superior Court that Monroe's current claim is, in effect, a restated version of his motion for a new trial, which was heard and decided by this Court on direct appeal.[17] Thus, the claim is procedurally barred.

---

[16] *Monroe*, 28 A.3d at 431 (emphasis added).

[17] As the Commissioner noted in her Report and Recommendation, the renewal of these motions would not have been effective because the Superior Court, and later this Court, held that the attempted robbery testimony from Jonathan and Ronald was properly admitted. *State v. Monroe*, 2014 WL 934446, at *6-7 (Del. Super. Mar. 6, 2014). As for the motion to sever, we held, in ruling on Monroe's direct appeal, that the trial court did not abuse its discretion in denying Monroe's motion to sever the January 2006 attempted murder charge and the April 2007 first degree murder charge. We concluded that the attempted murder evidence was highly probative of the State's murder case and was not unfairly prejudicial to Monroe. Further, we noted that the jury was properly instructed on how to evaluate evidence of other crimes. As to this claim also, the Superior Court did not abuse its discretion when it held that Monroe's first claim was procedurally barred under Superior Court Criminal Rule 61(i)(4), and even if the claim were not barred, it is without merit.

10

(19)   Even if Monroe's claims were not procedurally barred, Monroe cannot satisfy the *Strickland* test.  Monroe's counsel employed a trial strategy regarding the robbery evidence that, albeit unsuccessful, was within the zone of reasonableness.  Additionally, Monroe cannot show that there is a reasonable probability that the proceeding would have turned out differently if his counsel had renewed the motions regarding the uncharged robbery.  Because this Court has found that the evidence was properly admitted, Monroe cannot establish prejudice based upon his counsel's failure to raise and renew these motions.  Accordingly, we reject Monroe's first claim on appeal.

(20)   As to his second claim on appeal, Monroe argues that counsel was ineffective for failing to request a mistrial after Kason ceased testifying on the stand and invoked his Fifth Amendment rights.  Monroe contends that when Kason ceased testifying, it was an act that showed the jury that Kason feared retaliation by Monroe, which caused Monroe to be cast in a bad light to the jury.  Monroe further argues that because Kason invoked the Fifth Amendment, the jury would believe that Kason was guilty of a crime.  Since Monroe was with Kason at the time of the incident, Monroe contends that the jury would conclude that he was also guilty.  Monroe also argues that a curative instruction would not have been appropriate, and instead, his counsel should have requested a mistrial.

(21) The Superior Court did not abuse its discretion when rejecting this claim because Monroe has not satisfied the prejudice prong of *Strickland*. Monroe's argument that he was prejudiced by Kason's statements and actions on the stand is undercut by the fact that he was acquitted of the attempted murder charges. Further, Monroe was never charged for the attempted robbery of Ferrell. In *Dawson v. State*, we held that a showing of prejudice cannot be based on an appellant's conclusory statements, and that failure to state with particularity the nature of the prejudice experienced is fatal to a claim of ineffective assistance of counsel.[18] The Superior Court did not abuse its discretion when it rejected Monroe's second claim because Monroe had not satisfied the prejudice prong of the *Strickland* test. Accordingly, we need not consider the first prong of the *Strickland* test.

(22) As for his third claim on appeal, Monroe argues that counsel was ineffective for failing to request a mistrial when the jury found newly discovered evidence that was not admitted during trial. At trial, the jacket found in Saunders' apartment was entered into evidence. During jury deliberations, after evidence had been closed, a juror found a store receipt in the pocket of the jacket. The receipt was for auto repairs at a Pep Boys shop with the name "Jamar Dawson" on it. The receipt was dated the day before the shooting. Monroe argues that the jury could

---

[18] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

12

have considered the name on the receipt and concluded that he was using a fake name to avoid arrest by the police, or the jury could have concluded that the name on the receipt meant that someone other than Monroe was the shooter. Monroe argues that this evidence would have persuaded the jury that he was not the shooter, and thus, counsel was ineffective for failing to request a new trial in which this evidence could be presented.

(23) Trial counsel made a strategic decision to request a curative instruction rather than move for a mistrial. They acknowledged in their affidavit that the discovery of the receipt was "problematic" but opted to recommend to the court that the jury continue with deliberations because "the jury had been deliberating for quite a while, and [they] thought from [their] observation that the jury was receptive to the defense case."[19] The trial court also noted that counsel had raised the concern that "that there was no evidentiary foundation laid for those items, no opportunity for cross-examination about them, no opportunity for argument in closing argument by defense counsel as to the significance, if any, of those items. They shouldn't have been before the jury."[20] Before admonishing the jury not to consider the evidence, the court stated that "[j]uries are, as [trial counsel] said, frequently instructed to disregard testimony, or items admitted into

---

[19] *State v. Monroe*, 2014 WL 2581971, at *6 (Del. Super. Jun. 6, 2014).
[20] *Id.*

13

evidence sometimes or inadvertently shown to the jury before they were admitted, and they regularly are instructed to disregard certain testimony and sometimes exhibits that do come to their attention." Ultimately, the jury was told to disregard the evidence and "[j]uries are presumed to follow the trial judge's instructions."[21] Given the various ways the receipt could have been interpreted, trial counsel made a strategic decision which satisfies the test for competent representation set forth in *Strickland*. Trial counsel's decision to not request a mistrial falls within the wide range of reasonable conduct afforded to counsel under *Strickland*.

(24) Nor can Monroe establish prejudice. Having advanced a claim of ineffective assistance of counsel, Monroe had to put forth a rational argument that his counsel had reason to believe a new trial was warranted because, for example, Monroe gave them a basis to fairly argue that the jacket in evidence was not his or had been worn by someone else, and the failure to request a mistrial thus negated Monroe's chance for a fair trial at which he could claim that "Jamar Dawson" was the shooter. Instead, Monroe merely acknowledges that the new evidence "could have been extremely harmful or extremely beneficial." *Strickland* requires more than mere possibility of prejudice; a petitioner in a Rule 61 motion alleging ineffective assistance of counsel "must make specific allegations of actual

---

[21] *Revel v. State*, 956 A.2d 23, 27 (Del. 2008).

14

prejudice and substantiate them."[22] Because Monroe has not provided any basis for us to believe that he gave his counsel any rational basis to argue that the jacket in evidence was not his or had been worn by someone else -- nor does he claim on appeal that the jacket was not in fact his or was worn by someone else -- Monroe's claim fails under *Strickland*'s second prong. Accordingly, we find no merit in Monroe's third claim on appeal.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice

---

[22] *Wright*, 671 A.2d at 1356; *see also Dawson*, 673 A.2d at 1196 (requiring that prejudice under the *Strickland* test be shown with support and explanation).