IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOEQWELL COVERDALE, | § | |
| | § | No. 377, 2014 |
| Defendant Below- | § | |
| Appellant, | § | Court Below:  Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | No. 1212005871 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: April 29, 2015
Decided: May 12, 2015

Before **STRINE**, Chief Justice, **VALIHURA**, and **VAUGHN**, Justices.

## ORDER

On this 12th day of May 2015, it appears to the Court that:

(1) Defendant-below/Appellant Joeqwell Coverdale appeals from a Superior Court jury conviction of three counts of Robbery First Degree, Robbery Second Degree, four counts of Possession of a Firearm during the Commission of a Felony ("PFDCF"), and Conspiracy Second Degree.  Coverdale raises one claim on appeal. He contends that the Superior Court erred when it denied his motion for a mistrial after Officer John Mitchell, a witness for the State, testified in court that he realized the victims of the robbery were describing Coverdale because of the officer's past experiences with him.  We find no merit to Coverdale's claim and affirm.

(2) On December 9, 2012, Mohammed Kayyali, his brother Abdullah Kayyali, Emilio Laury, and Annette Torregrossa were driving around in Mohammed's car and smoking marijuana. After running out of marijuana, they drove to the Fenwick Apartments in Elsmere, Delaware to purchase more marijuana from a dealer with whom Laury was acquainted. Once there, Laury exited the vehicle and walked behind one of the apartment buildings to make the purchase. While the occupants of the vehicle were waiting for Laury to return, two men approached the car and robbed them at gunpoint. One man, later identified as Coverdale, stood next to the driver's door, where Mohammed was sitting, and pointed a gun at Mohammed's head. The other man, later identified as Gordon Potter, went to the rear of the vehicle and robbed the other passengers.

(3) The robbers took wallets, money, and cell phones from the victims, as well as the keys to the vehicle, jewelry from Torregrossa, and the newly purchased marijuana from Laury when he returned to the car. After searching the trunk of the car for more valuables, the gunman gave the keys back to Mohammed and told him to leave the area. Mohammed asked the gunman if he could have his wallet back, and the gunman complied. Before returning the wallet, however, the gunman read the address on Mohammed's driver's license and said "I know where you live at, I seen

your address and I know exactly where that address is."[1]   He then threatened Mohammed by stating, "[D]on't tell the cops or we'll get you."[2]

(4) After leaving the Fenwick Apartments and arriving at Abdullah's house, the victims spotted Officer Mitchell of the Elsmere Police Department and flagged him down.  Officer Mitchell interviewed the victims in Abdullah's house, then again at the police station.  The victims described the gunman as a short black male, with a goatee, sideburns, and light brown eyes.  Based on this description, Officer Mitchell composed two photographic line-ups.  One contained a photograph of Coverdale, and the other contained a photograph of Potter.  Mohammed identified both Coverdale and Potter from the line-ups.  Abdullah and Laury also identified Coverdale from the line-up, but were unable to identify Potter.

(5) Coverdale was arrested on the day of the robbery.  A subsequent search of his apartment uncovered the four cell phones stolen from the victims.  Prior to Coverdale's trial, Potter was also arrested and pled guilty to Robbery First Degree, Robbery Second Degree, and Conspiracy Second Degree.  At Coverdale's trial, Potter testified that he, Coverdale, and Coverdale's brother Joseph robbed the victims at the Fenwick Apartments.  Potter stated that he provided Coverdale with a gun at his request, and admitted that he robbed the passengers sitting in the backseat of the

---

[1] Appellant's Op. Br. App. at A32.
[2] Appellant's Op. Br. App. at A39.

3

vehicle while Coverdale held the gun to Mohammed's head. He further testified that he saw Coverdale rob Mohammed, and that Joseph acted as lookout for the crime, keeping watch nearby.

(6) Officer Mitchell also testified at trial regarding his investigation of the robbery. On direct examination, the following exchange took place between Officer Mitchell and the prosecutor:

> PROSECUTOR: Were you able to get a description of any of the people involved?
>
> MITCHELL: I was.
>
> PROSECUTOR: Okay. And what did you do with that information?
>
> MITCHELL: With that information, I got a description of the suspect that was armed with the handgun. He was described as a short black male, goatee, a small goatee with the sideburns, and having light brown eyes.
>
> PROSECUTOR: Okay. And when you received that information, what did you do?
>
> MITCHELL: At that point, I was familiar with the subject through past experiences.[3]

(7) Coverdale's counsel immediately objected to Officer Mitchell's statement that he was "familiar with the subject through past experiences" and, at sidebar, moved for a mistrial. Coverdale argued that the testimony was prejudicial and "suggest[ed] that [Coverdale] [was] a regular person who [Officer Mitchell] arrests."[4]

---

[3] Appellant's Op. Br. App. at A43-44.
[4] Appellant's Op. Br. App. at A44.

4

The trial court denied the motion and gave the following curative instruction to the jury:

> Ladies and gentlemen, one of the last bits of testimony the police officer gave might be a little bit confusing. So, I want to make sure that I clarify that. The fact that this witness has stated that he was familiar with the defendant from quote, "past experiences," is stricken from the record and you're to give that testimony absolutely no weight in your deliberations in this case. Nor are you to try to speculate about what he means by past experiences. Elsmere is a small town and there are many things that police officers do that have absolutely nothing to do with criminal investigation or anything of the like. So, that testimony is stricken, you're not to use it in any way in your deliberations in this case.[5]

(8) "We review a trial judge's decision to grant or deny a mistrial for abuse of discretion."[6] "This grant of discretion recognizes the fact that a trial judge is in the best position to assess the risk of any prejudice resulting from trial events."[7] "A trial judge should grant a mistrial only when there is manifest necessity or the ends of public justice would be otherwise defeated. The remedy of a mistrial is mandated only when there are no meaningful and practical alternatives to that remedy."[8] "A trial judge's prompt curative instructions 'are presumed to cure error and adequately direct the jury to disregard improper statements.'"[9] "Juries are presumed to follow

---

[5] Appellant's Op. Br. App. at A44.

[6] *Smith v. State*, 963 A.2d 719, 722 (Del. 2008) (internal citations omitted).

[7] *Revel v. State*, 956 A.2d 23, 27 (Del. 2008).

[8] *Smith*, 963 A.2d at 722 (internal citations and quotation marks omitted).

[9] *Id.* (quoting *Revel*, 956 A.2d at 27).

5

these instructions."[10]

(9) In determining whether a witness's unsolicited comment is so prejudicial as to warrant a mistrial, we consider the following four factors: (1) the nature and frequency of the comments; (2) the likelihood of resulting prejudice; (3) the closeness of the case; and (4) the sufficiency of the trial judge's efforts to mitigate any prejudice.[11]

(10) Applying the above analysis to this case, the first factor favors the State. The comment at issue was made on a single occasion during the course of a three-day trial. Although Officer Mitchell's comment made reference to past experiences with Coverdale, it did not reference past criminal conduct. The comment was vague and could have referred to a variety of different encounters with Coverdale. Thus, the first factor weighs against finding that the trial court abused its discretion.

(11) As to the second factor, the likelihood of resulting prejudice was slight. Officer Mitchell's vague comment referred only to unspecified past experiences with Coverdale. This generic reference to "past experiences" made no mention of Coverdale's criminal history and did not reveal that Coverdale had been the target of prior police investigations. As a result, the second factor militates against granting

---

[10] *Id.* at 722-23 (internal citations omitted).
[11] *Pena*, 856 A.2d at 550-51.

6

a mistrial.

(12) The third factor also weighs in favor of the State as this was not a close case. At trial, Mohammed, Abdullah, and Torregrossa identified Coverdale as the gunman who robbed them. Laury identified Coverdale as the gunman from a photographic line-up immediately following the robbery. Potter testified that he had supplied Coverdale with the gun, and that he, Coverdale, and Joseph had all participated in the robbery. Finally, the four cell phones stolen from the victims were recovered from Coverdale's home.

(13) As to the final factor of the analysis, we find that the trial court's effort to mitigate the alleged prejudice in this case was sufficient. In *Johnson v. State*, this Court stated that "[v]ague and infrequent statements that do not reference past criminal conduct are generally the type that can be cured."[12] Here, the trial court immediately struck Officer Mitchell's statement from the record and issued a curative instruction to the jury. The instruction specifically directed the jury to give the statement no weight, not to speculate about what Officer Mitchell meant by "past experiences," and not to use the statement in any way during deliberations. Because jurors are presumed to follow a trial court's instructions, the fourth factor favors the State.

---

[12] *Johnson v. State*, 2006 WL 3759403, at *2 (Del. Dec. 22, 2006).

7

(14) After carefully weighing the applicable factors, we find that neither "manifest necessity" nor the "ends of public justice" required a mistrial.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

_____
Justice